713 So.2d 505 (1998)
Diane SPILLERS, et al., Plaintiff/Appellee/Appellant,
v.
ABH TRUCKING COMPANY, INC., et al., Defendant/Appellant/Appellee.
No. 30332-CA.
Court of Appeal of Louisiana, Second Circuit.
April 13, 1998.
Order Granting Rehearing May 8, 1998.
*507 Jack Wright, Jr., Monroe, for Plaintiff/Appellee/Appellant.
Cotton, Bolton, Hoychick & Doughty by John Hoychick, Jr., Rayville, for Defendant/Appellant/Appellee ABH Trucking Company.
Theus, Grisham, Davis & Leigh by Charles H. Heck and George M. Snellings IV, Monroe, for Defendant/Appellant Colonia Insurance Company.
Guglielmo, Lopez, Tuttle, Hunter & Jarrell by James T. Guglielmo, Opelousas, for Intervenor/Appellee Bituminous Casualty Corporation.
Before BROWN, WILLIAMS and STEWART, JJ.
Order Granting Rehearing on Limited Basis May 8, 1998.
WILLIAMS, Judge.
In this personal injury case, plaintiffs[1] appeal the jury's verdict finding that the medical treatment that Dr. Bruce Razza provided to Diane Spillers was unrelated to the accident, and consequently, defendant, ABH Trucking Company ("ABH"), was not required to pay for the treatment. Plaintiffs also appeal the trial court's allocation of expert witness fees and court costs. ABH's commercial liability insurer, Colonia Insurance Company ("Colonia"), appeals the trial court's grant of summary judgment in favor of plaintiffs, finding that at the time of the accident, Jason Slane's vehicle was insured under the policy issued by Colonia. For the following reasons, we affirm the jury's finding and the trial court's assessment of costs and expert witness fees against the plaintiffs and ABH. However, we reverse the summary judgment granted in favor of the plaintiffs on the issue of insurance coverage and render judgment in favor of Colonia dismissing it from this lawsuit. The assessment of costs against Colonia is also reversed.

FACTS
On February 25, 1992, plaintiff, Diane Spillers, was stopped at a traffic light at the intersection of Forsythe Avenue and Highway 165 in Monroe, Louisiana, when her vehicle, a 1986 F-150 Ford pick-up truck, was struck from behind by a 1990 Ford Ranger pick-up truck, owned and driven by Jason Slane. At the time of the accident, Slane was employed as a mechanic by ABH Trucking Company, Inc. ("ABH") of West Helena, Arkansas. Slane and a co-employee, Jimmy Patterson, were traveling from West Helena to Leesville, Louisiana to repair an eighteen-wheel truck owned by ABH.
Officer Mitchell Doyle Hobbs of the Monroe Police Department investigated the accident. Officer Hobbs testified that neither Slane nor Patterson were injured in the accident, but that Spillers complained of neck pain. According to Officer Hobbs' accident report, Spillers suffered a minor injury, but an ambulance was not called to the scene. After the accident, Slane and Patterson continued to Leesville and Spillers went to North Monroe Hospital for treatment.
Dr. Louis V. Crook, Jr. treated Spillers at the emergency room of the North Monroe Hospital. Dr. Crook examined plaintiff and ordered x-rays of the skull and the cervical spine and a MRI. The x-rays were negative for acute injuries and the results of the MRI were negative for any ruptured discs. Dr. Crook prescribed an anti-inflammatory drug, a muscle relaxer and pain medicine. Plaintiff was released and referred to Dr. Thomas Gulick, a neurologist who had treated plaintiff on a prior occasion.
According to plaintiff, she unsuccessfully attempted to make appointments to see Dr. Gulick and Dr. Russ Greer on the day after the accident. Eventually, plaintiff contacted Dr. Warren Daniel, who advised her to report to Glenwood Hospital. On the afternoon of February 26, 1992, plaintiff was admitted to Glenwood Hospital for further treatment of injuries allegedly sustained as a result of the accident. Plaintiff complained of pain in her neck and lower back and numbness in her right arm. Dr. Daniel testified that he examined plaintiff on February 27, 1992 and concluded that she was suffering *508 from musculoligamentous strains of the neck and shoulder. He ordered physical therapy consisting of heat and massage to the left shoulder and neck area. Plaintiff remained in Glenwood Hospital until March 16, 1992. Dr. Daniel stated that at the time of plaintiff's discharge from Glenwood, he felt that she had suffered a severe case of whiplash. He opined that with continued conservative treatment, plaintiff would recover.
On October 1, 1992, plaintiff consulted Dr. Bruce Razza because of pain resulting from injuries allegedly sustained as a result of the accident. At the time of her initial visit, plaintiff was pregnant with her ninth child. Consequently, Dr. Razza suggested that she wait until after the birth of her child before beginning treatment. Plaintiff's child was born December 1, 1992. Plaintiff underwent tests on December 7-8, 1992 to determine the source of her pain.
On December 10, 1992, Dr. Razza performed a bilateral decompression along with a lumbar fusion (lower back), the first of three surgeries to be performed on the plaintiff. On December 16, 1992, plaintiff underwent cervical (neck) surgery and in October 1993, Dr. Razza performed cervical surgery to remove discs. According to Dr. Razza, the necessity of the first two surgeries was related to pain from injuries that plaintiff alleges resulted from the accident. The third surgery was the result of a "domino effect" that added stress to the spinal segment below where he had initially operated. He also performed carpal tunnel surgery to relieve pressure from the nerve in the regions of the neck and the carpal tunnel. Subsequent to the December 16, 1992 surgery and prior to the surgery performed in October 1993, plaintiff underwent oral surgery for temporomandibular joint ("TMJ") dysfunction which was performed by Dr. Geist. Her last visit with Dr. Razza was on September 21, 1995.
Plaintiffs filed suit against Jason Slane and his automobile liability insurer, State Farm Insurance, Company ("State Farm") and ABH and its commercial liability insurer, Colonia. Plaintiffs' claim against Jason Slane and State Farm was settled prior to trial. Plaintiffs also sued Bituminous Casualty Corporation ("Bituminous"), their uninsured/underinsured motorist ("UM") insurer. Plaintiffs settled their claim against Bituminous. However, Bituminous intervened seeking to recover those sums paid to plaintiffs pursuant to the terms and provisions of the UM policy issued to Pacific & Atlantic Oil Co., Inc., the corporation owned by James Spillers[2].
Plaintiffs filed a motion for summary judgment alleging that, at the time of the accident, Jason Slane's vehicle was being used as a "temporary substitute auto," and therefore, his vehicle was insured under the policy that Colonia issued to ABH. Colonia filed an opposition to plaintiffs' motion for summary judgment along with its own motion for summary judgment asserting that Jason Slane was not operating a "temporary substitute auto," and therefore, he was not covered under the policy issued to ABH. The trial court granted the plaintiffs' motion for summary judgment on the issue of insurance coverage, and denied Colonia's motion.
After a trial, the jury concluded that the medical treatment provided by Dr. Razza was not related to the injuries that Spillers sustained as a result of the accident in question. The jury found ABH liable for Spillers' injuries, but limited the award to the time that she spent in Glenwood Hospital. Plaintiffs were awarded $47,500 in damages to be disbursed accordingly: Diane Spillers, $10,500 for pain and suffering and $20,000 for medical expenses; $1,000 to James Spillers for loss of consortium; and $2,000 each to the eight minor children[3] for loss of consortium. However, Bituminous was subrogated to the plaintiffs' right to recover that award. The trial court awarded Bituminous $450,000, to be paid by Colonia, as reimbursement for the settlement amount it had paid to plaintiffs.[4]
*509 Plaintiffs appeal the jury's finding that the medical treatment provided by Dr. Razza was unrelated to the accident and therefore, defendant was not required to pay for the treatment. Plaintiffs also appeal the trial court's assessment of costs and expert witness fees. Colonia appeals the trial court's grant of summary judgment in favor of plaintiffs.

DISCUSSION

Assignments No. 1 & 2
Plaintiffs contend that the jury erred in finding that Diane Spillers' medical treatment and surgeries provided by Dr. Razza were unrelated to the automobile accident that occurred on February 25, 1992. Plaintiffs argue that because Spillers acted in good faith when she sought treatment from Dr. Razza, the tortfeasor is required to pay for the medical treatment and surgeries.
The determination of the causation and extent of a plaintiff's injuries is a question of fact. An appellate court may not set aside a finding of fact made by a judge or jury in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the complained-of injuries. American Motorist Insurance Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Maranto v. Goodyear Tire & Rubber Co., supra. The test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved, through medical testimony, that it was more probable than not that the subsequent injuries were caused by the trauma suffered in the accident. Maranto v. Goodyear Tire & Rubber Co., supra; Johnson v. Manuel, 95-913 (La.App. 3 rd Cir. 1/31/96), 670 So.2d 273.
Plaintiffs are aided in proving the causal relationship between the accident and their injuries by the legal presumption that a medical condition producing disability is presumed to have resulted from the accident if the injured person was in good health prior to the accident, but shortly after the accident, the disabling condition manifested itself. Maranto v. Goodyear Tire & Rubber Co., supra; Breaux v. Maturin, 619 So.2d 174(La. App. 3rd Cir.1993). To overcome this presumption, the defendant must show that some other particular incident could have caused the injury in question. Maranto v. Goodyear Tire & Rubber Co., supra; Breaux v. Maturin, supra.
In the present case, the evidence establishes that Diane Spillers experienced back and neck pain prior to the accident on February 25, 1992. The record reflects that Spillers visited Dr. Thomas Gulick on March 14, 1989, complaining of numbness in her right leg and pain in her lower and upper back between her shoulders. According to Dr. Gulick, Spillers informed him that she had been experiencing these problems for several years and had previously seen a chiropractor. Dr. Gulick testified that Spillers' visit to his office on that particular day was for a new symptom associated with numbness in the hip and thigh area of her right leg. Dr. Gulick scheduled a MRI, which was postponed when he discovered that Spillers was pregnant with her seventh child.
When questioned concerning Dr. Gulick's reports of her initial visit and the history that she provided, Spillers testified that she had seen a chiropractor once or twice approximately fourteen years prior to the date of trial. She expressed that she was not seeing a chiropractor at the time of her visits to Dr. Gulick.
According to Dr. Gulick, he saw Spillers again on August 7, 1989 and she continued to complain of pain in her back. She also complained of pain in both of her legs and soreness in her hands and the extensor surface of her forearms, the area where a wrist watch is worn. Dr. Gulick stated that the symptoms were somewhat suggestive of carpal tunnel syndrome, however, tests administered to detect carpal tunnel syndrome revealed otherwise. Dr. Gulick testified that symptoms of carpal tunnel syndrome are common during the later months of pregnancy and that usually, two to three months after pregnancy, *510 the symptoms resolve. According to Dr. Gulick, if the symptoms persist past this period, it is possible that another problem exists.
Spillers saw Dr. Gulick again on August 21, 1989. According to Dr. Gulick, she reported that the pain in her back was worse than before. She also commented that she had not had these type of problems during her previous pregnancies. Consequently, a MRI was taken of the lumbosacral spine, the lower back. Dr. Gulick testified that the MRI revealed some minimal disc bulges but nothing remarkable or alarming. Spillers' last visit with Dr. Gulick was August 21, 1989. Her child was born on November 24, 1989. According to Spillers, the symptoms resolved after the birth of her child.
Dr. Razza attempted to determine the source of Spillers' pain during her visits with him. He conducted tests and reviewed the results of tests conducted by the doctors who had seen Spillers in Monroe. He determined that Spillers had several bulging discs in the neck and lower back. According to Dr. Razza, a disc bulge in and of itself is not necessarily a problem, however, when aggravated by trauma, the bulging discs can cause pain. Dr. Razza expressed that Spillers had experienced a traumatic aggravation of degenerative changes in her spine and concluded that her symptoms were a result of the automobile accident that occurred on February 25, 1992. However, his conclusion was based on the medical history that Spillers provided to him. According to Dr. Razza, during the time that he treated Spillers, he was not aware of Dr. Gulick's medical records and Spillers never informed him that she had experienced back and neck pain prior to the accident. After familiarizing himself with Dr. Gulick's report, Dr. Razza testified that the symptoms Spillers described to Dr. Gulick were similar to the symptoms that she had described to him. Dr. Razza stated that an individual who was Spillers' age could develop symptomatic degenerative problems without having been involved in a motor vehicle accident. He also concluded that multiple pregnancies could have accounted for some of the pain Spillers was experiencing.
As previously stated, Spillers experienced back and neck pain in 1989 during the time that she was pregnant with her seventh child. These symptoms resolved after the birth of her child. Immediately following the accident, Spillers became pregnant with her ninth child. Dr. Razza recommended that she wait approximately two months after the birth of her child before beginning treatment with him. However, Spillers chose to undergo testing within a week after the birth of her child. She had her first surgery approximately nine days after the birth. Because Spillers underwent surgery so soon after giving birth, it is difficult to determine whether the accident caused the pain that she was experiencing or, as in her earlier pregnancy, the pain was related to the pregnancy and would have resolved after the birth of the child.
The medical evidence presented by defendants supports the jury's finding that Diane Spillers was not in good health prior to the accident. She has failed to satisfy her burden of proving through medical testimony that it is more probable than not that her subsequent injuries were caused by the trauma suffered in the accident. Based upon the record, the jury did not commit manifest error in finding that there was no causal connection between the accident in question and the medical treatment Spillers received from Dr. Razza. This assignment lacks merit.
In their second assignment of error, plaintiffs argue that, because Spillers was not acting in bad faith when she sought treatment from Dr. Razza, ABH is required to pay for over treatment or unnecessary treatment. In support of their argument, plaintiffs rely on Starnes v. Caddo Parish School Board, 598 So.2d 472 (La.App. 2d Cir.1992).
Plaintiffs correctly state that a tortfeasor is required to pay for over treatment or unnecessary treatment unless the victim incurred these expenses in bad faith. However, the present case is factually distinguishable from the Starnes case. In Starnes, the trial court found that there was a causal relationship between the accident and the injuries suffered by the plaintiff, and that the defendant was liable for the cost of all medical *511 treatment sought in connection with the injuries caused by the accident. See also, Chambers v. Graybiel, 25,840 (La.App.2d Cir. 6/22/94), 639 So.2d 361. In contrast, in the present case, the jury concluded that the medical treatment provided to the plaintiff by Dr. Razza related to an injury for which defendants were not liable. Thus, this assignment of error is without merit.

Assignment No. 3
Plaintiffs argue that the trial court erred by not holding the party cast in judgment responsible for all costs and expert fees.
LSA-C.C.P. art. 1920 provides:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
Witnesses called to testify as expert witnesses shall be compensated for their services, with the amount to be determined by the court and taxed as costs to be paid by the party cast in judgment. LSA-R.S. 13:3666.
The allocation of court costs among the parties is a matter which is subject to the discretion of the trial court. McConathy v. McConathy, 25,542 (La.App.2d Cir. 2/23/94), 632 So.2d 1200. While it is the general rule that the party cast in judgment should be taxed with costs, the trial court may assess costs in any equitable manner. Williams v. Wiggins, 26,060 (La. App.2d Cir. 8/17/94), 641 So.2d 1068; Murphy v. Boeing Petroleum Services, Inc., 600 So.2d 823 (La.App. 3 rd Cir.1992); Clement v. Clement, 554 So.2d 292 (La.App. 5 th Cir. 1989). A prevailing party may be taxed with costs if that party in some way incurred additional costs pointlessly or engaged in other conduct which would equitably justify the assessment of costs to the prevailing party. Williams v. Wiggins, supra.
The trial court assessed one-half of costs to plaintiffs and one-half of costs to defendants. The trial court concluded that it was clear from the verdict that the jury found the testimony of plaintiffs' experts regarding loss of earning capacity, future drug costs and rehabilitation unnecessary. The trial court also considered the jury's finding that Dr. Razza's treatment of plaintiff was not related to the accident in question. Therefore, the trial judge held that the fees for these experts would not be taxed as costs.
We cannot say that the trial court abused its discretion in assessing the costs equally. This assignment of error is without merit.

Assignments No. 4, 5 & 6
Colonia contends that the trial court was clearly wrong in granting summary judgment in favor of plaintiffs on the issue of insurance coverage. It challenges the trial court's finding that Jason Slane's 1990 Ford Pick-up was a "temporary substitute auto" as defined in Colonia's policy. Colonia also contends that the policy issued to ABH excludes coverage for employees under the age of twenty-three unless specifically named as an insured in the policy. It argues that, since Jason Slane was nineteen years old at the time of the accident and not specifically named as an insured, he was not covered under the policy.
Appellate courts are to review summary judgment de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). LSA-C.C.P. art. 966 provides that a motion for summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Collinsworth v. Foster, 28,671 (La. App.2d Cir. 9/25/96), 680 So.2d 1275.
Colonia's policy contains the following provisions:
C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS
If liability coverage is provided by this coverage form, the following types of vehicles are also covered "autos" for Liability:

*512 ....
3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
a. Breakdown;
b. Repair;
c. Servicing;
d. "Loss;" or
e. Destruction
....
... (N)o coverage is afforded under this policy for any owner, employee or member of the household who is under twentythree (23) years of age, unless specifically named and appropriate premium charged for the same.
When interpreting insurance contracts, the judicial responsibility is to determine the intent of the parties. Gunn v. Automotive Casualty Ins. Co., 614 So.2d 154 (La.App. 3 rd Cir.1993). Terms and provisions of insurance contracts are to be construed in their general and popular meaning and any ambiguity in an insurance contract will be construed against the insurer and in favor of the insured. Gunn v. Automotive Casualty Ins. Co., supra; Tunks v. Hartford Accident & Indemnity Co., 520 So.2d 1060 (La.App. 3rd Cir.1987). However, a clear and unambiguous provision in the insurance contract limiting liability must be given effect. Gunn v. Automotive Casualty Ins. Co., supra. In the absence of a conflict with statutes or public policy, insurers have the same rights as individuals to limit their liability and to enforce whatever conditions they please upon their obligation. Gunn v. Automotive Casualty Ins. Co., supra.
The present issue deals with resolving the meaning of a "temporary substitute automobile." A "temporary" automobile is one that is used for a limited time, as opposed to being used permanently. "Substitute" connotes the replacement of one thing for another. Tunks v. Hartford Accident & Indemnity Co., supra. In order for Slane's vehicle to be categorized as a "temporary substitute automobile," it must be used for a limited time and in the same capacity as the vehicles insured by Colonia under the policy in question. Tunks v. Hartford Accident & Indemnity Co., supra; Babineaux v. Lavergne, 321 So.2d 401 (La.App. 3 rd Cir.1975).
ABH's trucks are used to transport lumber and saw dust. Slane's purpose for going to Leesville was to repair the stranded truck, not to "replace" it with his truck. Slane testified that on the day of the accident, he was making the second of three trips to Leesville for the purpose of repairing the truck. He stated that on his first trip, he transported the driver of the truck back to Arkansas. According to Slane, on the day of the accident, he did not transport the driver of the truck or any of the cargo back to Arkansas. This factual issue is in dispute[5].
In its ruling on the motion for summary judgment on the issue of insurance coverage under the Colonia policy, the trial court noted (1) that Slane was in the course and scope of his employment with ABH at the time of the accident, and (2) that a substitute vehicle does not have to be the same exact type of vehicle for coverage to apply. The trial court concluded that Slane's vehicle was a "temporary substitute auto." This conclusion was based on the fact that, on the day of the accident, the insured truck was inoperable and stranded in Leesville when Slane left Helena, Arkansas to repair the vehicle.
Jason Slane's 1990 Ford Pick-up meets two elements of Colonia's policy regarding "temporary substitute automobile," because the pick-up truck (1) was not owned by ABH, and (2) was used with the permission of its owner. However, on the day of the accident, Slane was acting in his capacity as a mechanic, and his vehicle was not a substitute or *513 "replacement" for the eighteen-wheel truck that was stranded in Leesville.
Colonia issued a policy to ABH to cover their fleet of eighteen-wheel trucks and the drivers. The policy contains a list of the eighteen-wheel trucks and drivers covered under the policy. The policy issued to ABH reflects that Colonia intended to provide coverage only for the lumber-hauling trucks in the fleet, any substitute vehicle performing the same function and the drivers.
As noted previously, when the accident occurred, Slane's vehicle was not being used in the same capacity as the inoperable lumber truck. Consequently, Slane's vehicle cannot be considered a "temporary substitute automobile" for the insured truck. Therefore, the trial court erred in finding that, on the day of the accident, Jason Slane's vehicle was covered under the policy that Colonia issued to ABH. Accordingly, we must reverse the summary judgment rendered against Colonia.
Having reached this conclusion, we do not find it necessary to address the issues raised by Colonia in its remaining assignments of error[6].

CONCLUSION
Those portions of the trial court's judgment rendered against Colonia Insurance Company, Inc. finding insurance coverage and casting it with costs are reversed, and Colonia is hereby dismissed from this lawsuit. Based on the stipulation dated October 15, 1996, that portion of the trial court's judgment rendered in favor of Bituminous Casualty Corporation and against Colonia Insurance Company, awarding Bituminous Casualty Corporation the sum of $450,000, together with legal interest from the date of judicial demand until paid, is also reversed. In all other respects, the judgment is affirmed. Costs of this appeal are assessed one-half to plaintiffs, Diane Spillers and James Spillers, individually and as natural tutor of the minor children, Colby Spillers, Forrest Spillers, William Spillers, Spencer Spillers, Sean Spillers, Ashlea Spillers, Paul Spillers, James Spillers and Shannon Spillers, and one-half to defendant, ABH Trucking Company, Inc.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
Before BROWN, WILLIAMS, STEWART, GASKINS and CARAWAY, JJ.

ON REHEARING
PER CURIAM.
Defendant, ABH Trucking Company, Inc. filed an application for rehearing regarding the assessment of appellate costs.
We grant the rehearing application for the limited purpose of reassessing appellate costs.
ABH Trucking Company, Inc. is hereby relieved from the payment of any costs of appeal.
The costs of plaintiffs' appeal are assessed to plaintiffs, Diane Spillers and James Spillers, individually and as natural tutor of the minor children, Colby Spillers, Forrest Spillers, William Spillers, Spencer Spillers, Sean Spillers, Ashlea Spillers, Paul Spillers, James Spillers and Shannon Spillers.
The costs of the appeal filed by Colonia Insurance Company are assessed one-half to plaintiffs, Diane Spillers and James Spillers, individually and as natural tutor of the minor children, Colby Spillers, Forrest Spillers, William Spillers, Spencer Spillers, Sean Spillers, Ashlea Spillers, Paul Spillers, James Spillers and Shannon Spillers, and one-half to Bituminous Casualty Corporation.
NOTES
[1] Plaintiffs include Diane Spillers, her husband, James Spillers and their nine children born prior to 1993.
[2] The truck that Diane Spillers was driving at the time of the accident was an oil-field truck used by James Spillers in his daily business.
[3] Damages were not awarded to the two children who were born after the accident.
[4] The trial court's award to Bituminous was based on a stipulation between Colonia and Bituminous and the plaintiffs and Bituminous dated October 15, 1996.
[5] Apparently, at the time of the filing of the motion for summary judgment, the parties believed that on the trip during which he had the accident, Slane had transported the driver of the inoperable eighteen-wheel truck from Leesville to Helena. We decline to address the propriety of the trial court's evidentiary ruling on the issue of Colonia's alleged "newly discovered evidence" or its proffer of this evidence. This factual dispute is not material to a resolution of the issue presented, and does not change the outcome of our decision. The pick-up truck was not a substitute vehicle for the inoperable eighteen-wheel truck.
[6] By assignments of error numbers 7 & 8, Colonia questions (1) whether the trial court should have considered newly discovered evidence between the time of its summary judgment rulings and the time of trial, and (2) whether the trial court, pursuant to the full faith and credit clause of the United States Constitution, should have recognized the Arkansas court's grant of summary judgment in favor of Colonia finding that Jason Slane was not insured under Colonia's policy and was not operating a "temporary substitute automobile" at the time of the accident.