823 So.2d 448 (2002)
Robert G. YAGEL, et al., Plaintiffs-Appellees,
v.
Stanley SANDERS and Judy Sanders, et al., Defendant-Appellant.
No. 36,101-CA.
Court of Appeal of Louisiana, Second Circuit.
July 17, 2002.
*449 Lunn, Irion, Salley, Carlisle, & Gardner by J. Martin Lattier, Jack E. Carlisle, Jr., and W. Orie Hunter III, Shreveport, Mayer, Smith & Roberts by Paul Mayer, Jr., Shreveport, for Defendant-Appellant, Louisiana Insurance Guaranty Association.
Graves & Graves by James W. Graves, Shreveport, for Plaintiffs-Appellees.
Casten & Pearce by Marshall Pearce, Shreveport, for Defendant-Appellee Stanley Sanders.
Before STEWART, GASKINS and CARAWAY, JJ.
GASKINS, J.
This appeal involves an accident in which a man standing on a roadside was *450 struck in the face by inadequately secured lumber being hauled in the bed of a passing pickup truck. Louisiana Insurance Guaranty Association (LIGA) appeals from a trial court judgment that found coverage under a policy issued by the insolvent United Southern Assurance Company (USAC). For the reasons set forth below, we affirm the trial court judgment.

FACTS
On August 14, 1992, Robert G. Yagel's vehicle became disabled on I-20 in Bossier Parish. At one point, Mr. Yagel stood on the roadside, preparing to have his vehicle towed. His adult daughter, Patricia Battlefield, was seated in the Yagel vehicle.
Just then, Stanley Sanders drove by in his personal vehicle, a 1978 Chrevrolet pickup truck. Mr. Sanders was the president and sole shareholder of SAD, Inc.; this company hauled such heavy items as railroad parts and lumber on flatbed trailers. After a job was canceled earlier that day, he decided to repair some broken boards in the bed of the 1989 Lufkin flatbed trailer which he owned but leased to SAD, Inc. He purchased several pieces of lumber from Lufkin Industries in Bossier City and put them in the bed of his personal pickup. One end of the lumber was placed in the bed near the tailgate, so that the other end rested over the top of the cab. That end was then secured to a headache rack at the front of the truck bed. However, as Mr. Sanders drove on the interstate, the lumber came loose and shifted. As the Sanders truck passed Mr. Yagel, one or more loose boards struck him in the face, inflicting severe injuries.
Mr. Yagel filed suit, seeking damages for the injuries he suffered. His wife sought recovery for her own loss of consortium and their daughter also sued to recover for the emotional distress she suffered as a result of witnessing her father's accident. One of the defendants was USAC, from which SAD, Inc., had purchased a liability insurance policy. That policy covered the 1989 Lufkin flatbed trailer, a 1988 International tractor truck, and "temporary substitute autos." The plaintiffs contended that Mr. Sanders' personal pickup truck qualified as a "temporary substitute auto" since it was being used to haul lumber for the repair of the flatbed trailer.
USAC and the plaintiffs filed cross motions for summary judgment on the issue of coverage. The trial court granted USAC's motion, finding that the pickup truck was not a "temporary substitute auto" under the policy. This court reversed and remanded, finding that there were genuine issues of material fact as to whether the 1989 Lufkin flatbed trailer was "out of service" on the date of the accident and whether the pickup truck was a "temporary substitute vehicle" under the USAC policy. Yagel v. Sanders, 27,276 (La.App.2d Cir.8/23/95), 659 So.2d 859, unpublished, writ denied, 95-2337 (La.12/8/95), 664 So.2d 425.[1]
Subsequently, LIGA was substituted for the insolvent USAC. Following this court's ruling in Spillers v. ABH Trucking Co., Inc., 30,332 (La.App.2d Cir.4/13/98), 713 So.2d 505, writs denied, 98-1313 (La.6/26/98), 719 So.2d 1063, and 98-1327 (La.6/26/98), 719 So.2d 1287, LIGA sought summary judgment on the coverage issue. The trial court denied the motion. In Yagel v. Sanders, 33,804 (La.App.2d Cir.3/23/00) unpublished, writ denied, XXXX-XXXX (La.6/2/00), 763 So.2d 603, this *451 court denied LIGA's writ application. In so doing, the court distinguished Spillers on the facts and found that there was a question of material fact as to whether the pickup truck was a temporary substitute auto under the policy.
In June 2001, the matter was tried before a jury. Mr. Sanders was found to be at fault in causing the accident and his fault was deemed to be the cause-in-fact of Mr. Yagel's injuries; he was also held to be acting as an employee of SAD, Inc., at the time of the injury. The jury found that the pickup truck was owned by Mr. Sanders; it was used for SAD, Inc. business with his permission; it was a substitute for the trailer covered by the USAC policy; and the trailer was out of service because of breakdown/repair or servicing. Pursuant to a stipulation reached by the parties, Mr. and Mrs. Yagel were awarded $149,900. Their daughter was awarded $15,000 for her emotional distress at witnessing the accident. All claims against Mr. Sanders' wife were dismissed.
LIGA appeals on the issue of coverage.

INSURANCE COVERAGE

Policy language
USAC's policy contains, in pertinent part, the following provisions:
SECTION ICOVERED AUTO
C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS
If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:
* * *
3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
a. Breakdown;
b. Repair;
c. Servicing;
d. "Loss"; or
e. Destruction.

Trial testimony
Mr. Sanders testified that as an employee of SAD, Inc., he functioned as a truck driver. He personally owned a tractor and a trailer which he leased to SAD, Inc., and drove on the company's behalf. The loads he transported were large, heavy items such as railroad parts, lumber and machinery. They would be loaded on the trailer by forklifts and electromagnet hoists, which would sometimes drop the items, causing the wooden floor of the trailer to be damaged and broken. Periodically, Mr. Sanders would have to replace portions of the trailer's wood floor. He would go to Lufkin Industries in Bossier City to purchase Brazilian hardwood for the repairs. He would transport the wood back home to Minden in the trailer. These repairs to the trailer were an ongoing concern.
When Mr. Sanders returned from a run to Amarillo, Texas, on Thursday, August 13, 1992, the decking of the trailer was broken in several places. He was concerned that parts transported on the trailer could fall through some of the holes. After learning on Friday that another load would not be available for transport until Monday, he went to Lufkin Industries to purchase Brazilian hardwood. He testified that due to the severity of the damage to the trailer floor, he decided to take his pickup truck instead of the trailer. It was not the first time he had used the pickup truck to haul boards for repair. He was concerned that someoneeven himself might step through one of the holes. He also feared that one of the pieces of the broken Brazilian hardwood on the trailer *452 might fall out on the roadway and cause a hazard to other motorists. He testified that he considered the trailer "out of service" on the day of the accident.
Judy Sanders, Mr. Sanders' wife and a corporate officer of SAD, Inc., testified that she paid the premiums for the USAC commercial liability insurance policy on the tractor and the trailer out of the corporation's checking account. However, she paid the State Farm premiums on her husband's personal pickup truck from a different account. She also testified that she was aware that her husband, as an employee of SAD, Inc., used his personal pickup truck as a substitute vehicle on company business. She corroborated her husband's testimony that repairing the trailer was a constant, ongoing job.
Trooper Richard E. Porter of the Louisiana State Police investigated the accident. He testified that Mr. Sanders gave State Farm as the name of the insurer for his truck. According to Mr. Sanders, the officer never asked him if he had any other insurance that might also provide coverage.

Law
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts. Leckie v. Auger Timber Company, Inc., 30,103 (La.App.2d Cir.1/21/98), 707 So.2d 459. The intent of the parties should be determined. La. C.C. art.2045.
Terms and provisions are to be construed in their general and popular meaning and any ambiguity will be construed against the insurer and in favor of the insured. La. C.C. art.2047 and 2057; Bergquist v. Fernandez, 535 So.2d 827 (La. App. 2d Cir.1988). The insurance contract is to be construed as a whole. McWright v. Modern Iron Works, Inc., 567 So.2d 707 (La.App. 2d Cir.1990), writ denied, 571 So.2d 651 (La.1990).
It is well settled that an appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless they are clearly wrong. Stobart v. State, through DOTD, 617 So.2d 880 (La. 1993). Based on this standard, the Louisiana Supreme Court has established a twotier test for reversal on appellate review:
(1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
(2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
Even when an appellate court may feel that its own evaluations are more reasonable than the fact finder's, reasonable determinations and inferences of fact should not be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

Discussion
As in the Spillers case, we are presented with the issue of whether a vehicle involved in an auto accident qualifies as a "temporary substitute automobile" under a policy potentially providing coverage. A "temporary" automobile is one that is used for a limited time, as opposed to being used permanently. "Substitute" connotes the replacement of one thing for another. Tunks v. Hartford Accident & Indemnity Company, 520 So.2d 1060 (La.App. 3d Cir. 1987). In order for the pickup truck to be categorized as a "temporary substitute automobile," it must be used for a limited time and in the same capacity as the vehicles insured under the policy in question. Tunks v. Hartford Accident & Indemnity Company, supra; Babineaux v. Lavergne, 321 So.2d 401 (La.App. 3d Cir.1975).
*453 In Spillers, supra, a mechanic for a trucking company was involved in an auto accident while driving his own pickup truck to a location where an 18-wheeler owned by his employer was stranded and disabled. The testimony showed that he was en route to repair the truck. The trucking company's vehicles were routinely used to transport lumber and sawdust. The trial court found that under the trucking company's commercial liability insurance policy, the mechanic's truck was covered as a "temporary substitute auto." (The Spillers policy provisions are identical to the ones in the present case.) This court reversed, finding that the pickup truck could not be a "temporary substitute auto" because at the time of the accident it was not being used in the same capacity as the inoperable lumber truck.
The present case is distinguishable from Spillers, supra. The mechanic in Spillers was merely using his personal truck to transport himself to the site where the stranded truck was located. Here, the trailer had been used in the past to transport the lumber necessary for its own repair. On the day of the accident, however, Mr. Sanders was using his personal pickup to transport the wood to repair the trailer because the trailer was so damaged as to make its use for that purpose unsafe. Consequently, the pickup truck was being used for a limited time and in the same capacity as the trailer, which was out of service because of "breakdown, repair or servicing."
In support of its position that the trailer was not "out of service," LIGA claims that, had another load not been canceled on the day of the accident, Mr. Sanders would have used the trailer to haul it. However, this is speculation. Ellis v. MFA Mutual Insurance Company, 419 So.2d 92 (La. App. 2d Cir.1982), writ denied, 422 So.2d 158 (La.1982).
LIGA argues that Mr. Sanders' position as president and sole shareholder of SAD, Inc., caused him to take on a "dual identity" and become the named insured, consequently preventing the application of the substitute auto provisions. However, SAD, Inc. was a corporation. A corporation is a juridical person; the personality of a juridical person is distinct from that of its members. La. C.C. art. 24. See Robinson v. Heard, XXXX-XXXX (La.2/26/02), 809 So.2d 943, which dealt with application of a temporary substitute auto provision when the named insured was a sole proprietorship, not a corporation.
LIGA also asserts that since SAD, Inc., merely leased the trailer and did not own it, the pickup truck could not qualify as a substitute for it, citing Martin v. Willis, 584 So.2d 1192 (La.App. 2d Cir.1991), writ denied, 590 So.2d 589 (La.1992). It also argues that since Mr. Sanders owned and operated SAD, Inc., the pickup truck equated to a vehicle owned by SAD, Inc. In support of this argument, it cites Chon v. Allstate Insurance Company, 522 So.2d 690 (La.App. 5th Cir.1988), and Lemoine v. Herrmann, 559 So.2d 898 (La.App. 4th Cir.1990), writ denied, 563 So.2d 1159 (La. 1990). However, review of these cases reveal that they all involved policy provisions not found in the instant case. Additionally, the trailer is listed in the schedule of "covered autos you own," even though they were only leased by SAD, Inc. Mr. Sanders' testimony established that he described his business operation to the insurer which issued a policy to provide the appropriate coverage. Any ambiguity in the policy is construed against the insurer and in favor of coverage.
Based upon our review of the record, we find that the jury was not clearly wrong in concluding that the USAC policy provided coverage under the circumstances presented in the instant case.

*454 CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, LIGA.
AFFIRMED.
NOTES
[1] The case was also before this court in Yagel v. Sanders, 26,778 (La.App.2d Cir.4/5/95), 653 So.2d 170. There we affirmed the trial court's dismissal of Sanders' homeowner insurer.