862 So.2d 374 (2003)
John R. WALLACE, Sr., Plaintiff-Appellee,
v.
FIRST ASSURANCE LIFE OF AMERICA, et al., Defendant-Appellant.
No. 37,865-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 2003.
*376 Blanchard, Walker, O'Quin & Roberts by Paul M. Adkins, Shreveport, for First Assurance Life of America and Interstate Dodge, Inc.
Hugh Cameron Murray, Monroe, for Interstate Dodge Incorporated.
Travis M. Holley, Bastrop, for Appellee, John R. Wallace, Sr.
McGlinchey Stafford, PLLC, by Kayla Dye May, New Orleans, for Chase Manhattan Bank.
Before BROWN, PEATROSS & DREW, JJ.
PEATROSS, J.
Defendant, First Assurance Life of America ("First Assurance"), appeals the judgment of the trial court denying its motion for summary judgment and granting Plaintiff's, John R. Wallace, Sr., motion for summary judgment and awarding him $9,437.85 plus legal interest as the amount due under the credit disability insurance policy issued by First Assurance to Mr. Wallace. For the reasons stated herein, we affirm the judgment of the trial court.

FACTS
On June 24, 1996, Mr. Wallace purchased a new Dodge Ram pickup truck from Interstate Dodge, Inc. ("Interstate Dodge") in Monroe, Louisiana. Mr. Wallace financed $24,803.30 at a rate of interest of 11.25 percent through a retail installment contract with Interstate Dodge. The contract was subsequently assigned to Chase Manhattan Bank, Inc. ("Chase Manhattan"). The financing agreement was for a term of 60 months obligating Mr. Wallace to make 59 monthly payments each in the amount of $429.85 starting on July 24, 1996, and a 60th "balloon payment" on June 24, 2001, in the amount of $9,437.85. The agreement called for Mr. Wallace to make payments totaling $34,799. The amount financed included premiums for life and disability credit insurance, although the amount of the premium charged in the contract is unreadable due to the poor quality of the exhibits submitted by the parties.
It is clear, however, that, in conjunction with the financing agreement, Mr. Wallace also purchased a credit life and disability insurance policy to pay the financed debt in the event of his death or disability. According to Mr. Wallace's deposition, the applications for financing and insurance were handled by the same employee of Interstate Dodge. The policy was issued by First Assurance. The credit life portion of the policy designates the "Initial Amount of Insurance" to be $34,799, the total liability incurred by Mr. Wallace under the financing agreement. The policy further provides that the amount of insurance provided under the policy would decrease each month in an amount equal to the initial amount of the insurance ($34,799) divided by the total number of months in the term of the policy (60).
The disability portion of the policy obligates First Assurance to pay the "Monthly Disability Benefit" reflected on the certificate of insurance, or $429.85, if and when the insured becomes totally disabled. The benefits are for the duration of the insured's disability, but are not to exceed the aggregate amount of the "Initial Amount of Insurance" and are not to be paid beyond the term of the policy.
Approximately six months later, First Assurance issued a correction endorsement in which it purported to clarify the coverage afforded under its policy. Specifically, the endorsement amended the "initial amount of insurance" under the credit life portion of the policy to be $25,361.15 for a term of fifty-nine (59) months. This *377 change reflects an attempt to alter the credit life portion of the coverage by reducing the debt insured from the entire amount due under the terms of the financing agreement to the amount due minus the balloon payment. The credit disability coverage under the policy is restated in the correction endorsement as providing a "monthly disability benefit" of $429.85 which is unchanged from the coverage afforded under the initial certificate. First Assurance concedes, however, that, for the purposes of the parties' cross motions for summary judgment and this appeal, the original certificate of insurance governs the relationship between the parties.
On or about April 27, 2000, Mr. Wallace became totally disabled. His disability from April 27, 2000, through the remainder of the term of the disability insurance policy is not disputed. After receiving proof of the disability, First Assurance began to pay the monthly disability benefit to Chase Manhattan, Interstate Dodge's assignee of the retail installment contract. When First Assurance did not make the final balloon payment on the note, Mr. Wallace filed the instant action seeking payment of the balloon amount under the credit disability insurance portion of the policy. Also named as defendants in the action were Interstate Dodge, as agent of First Assurance, and Chase Manhattan Bank, the irrevocable beneficiary under the policy.
On April 1, 2002, First Assurance and Interstate Dodge filed a motion seeking summary judgment alleging that the provisions of the contract of insurance are unambiguous and clearly do not provide for the payment by First Assurance of the balloon amount due by Mr. Wallace to Chase Manhattan Bank. On April 17, 2002, Mr. Wallace filed an opposition to Defendants' motion for summary judgment and a cross motion for summary judgment. Mr. Wallace alleged that the unilateral attempt by First Assurance to modify the term of the credit life coverage to 59 months should be deemed void and, in any event, ineffective as to the term of the credit disability coverage. Mr. Wallace further argued that, because the retail installment contract provided for the 60th payment to be a balloon amount, First Assurance was obligated to make payment of the balloon amount.
The motions were argued before the trial court on April 23, 2002, after which the trial judge took the matters under advisement. On May 21, 2002, the trial judge issued oral reasons for judgment finding that the original contract of insurance was for the full term of the loan and covered the balloon payment. The trial judge further found that the subsequent attempt by the insurer to modify the term of the insurance policy was merely an attempt to avoid making payment on the balloon amount. Accordingly, the trial judge denied First Assurance's motion for summary judgment and granted summary judgment in favor of Mr. Wallace and awarded him the sum of $9,437.85 plus legal interest from the date of judicial demand. A judgment to this effect was signed by the trial court on July 15, 2002. An appeal was taken by First Assurance on July 24, 2002, but dismissed by this Court after the record was lodged because the judgment appealed was interlocutory and not certified as a final judgment. The parties subsequently filed a joint motion seeking certification, which was granted by the trial court in written reasons for judgment signed on April 21, 2003. A new motion for appeal was filed by First Assurance on April 29, 2003, and an order granting the appeal was signed on May 2, 2003.

DISCUSSION
First Assurance assigns as error the trial court's granting of summary judgment *378 in favor of Mr. Wallace and denying its own motion for summary judgment on the basis that the clear and unambiguous provisions in the contract of insurance do not extend coverage for payment of the balloon amount.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Gaylord Chemical Corporation v. ProPump, Inc., 98-2367 (La.App. 1st Cir.2/18/00), 753 So.2d 349.
An insurance policy is a contract and it constitutes the law between the parties. Carney v. American Fire & Indemnity Co., 371 So.2d 815 (La.1979). It should be interpreted by using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377 (La.1993). If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La.1988). The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. Cadwallader v. Allstate Ins. Co., 02-1637 (La.6/27/03), 848 So.2d 577. The parties' intent, as reflected by the words of the policy, determines the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. La. C.C. art. 2047; Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co., 93-0911 (La.1/14/94), 630 So.2d 759. When the words of a contract are clear and explicit and lead to no absurd consequences, the court must enforce the contract as written and may make no further interpretation in search of the parties' intent. La. C.C. art. 2046.
An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another. Bossier Plaza Associates v. National Union Fire Insurance Company of Pittsburgh, 35,741 (La.App.2d Cir.4/3/02), 813 So.2d 1114; Benton Casing Service, Inc. v. Avemco Ins. Co., 379 So.2d 225 (La.1979). If there is an ambiguity in a policy, then that ambiguity should be construed in favor of the insured and against the insurer. Bossier Plaza Associates v. National Union Fire Insurance Company of Pittsburgh, supra; Yagel v. Sanders, 36,101 (La.App.2d Cir.7/17/02), 823 So.2d 448, writ denied, 02-2211 (La.11/8/02), 828 So.2d 1121; Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1953). Courts have no authority, however, to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language. Bossier Plaza Associates v. National Union Fire Insurance Company of Pittsburgh, supra; Pareti v. Sentry Indem. Co., supra; Monteleone v. American Emp. Ins. Co., 239 La. 773, 120 So.2d 70 (1960); Edwards v. Life & Cas. Ins. Co. of *379 Tenn., 210 La. 1024, 29 So.2d 50 (1946). Whether a contract is clear or ambiguous is a question of law. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co., supra.
In making our de novo review, we must first look to the intent of the parties as reflected in the wording of the policy to determine the extent of the coverage afforded. As a credit insurance policy, the contract is intended to insure the satisfaction of a debt, in whole or in part, in the event the debtor becomes unable to satisfy same. In the case sub judice, Mr. Wallace purchased credit insurance to satisfy the debt in the event of his death or disability with the policy to be in effect for a term of 60 months, the same term applicable to repayment of the debt under the retail installment agreement. In purchasing the credit life insurance, the policy provides that Mr. Wallace was insured for the "Initial Amount of Insurance" of $34,799, the total amount due under the financing agreement.
The disability provisions of the insurance policy are located in the section entitled "Monthly Disability Benefits," which set forth the coverage afforded in the event Mr. Wallace becomes totally disabled. Specifically, the subsection entitled "Benefit Determination" provides as follows:
Benefits will be paid for the actual number of consecutive days of covered Total Disability. The number of consecutive days of the Total Disability will be calculated from the first date of treatment by, or consultation with, a physician or practitioner on or after the date the covered Insured ceases work or employment. The amount of the daily benefit will be 1/30th of the Monthly Benefit stated in the Schedule of Benefits of this certificate. In no event shall benefits paid exceed in the aggregate the Initial Amount of Insurance stated in the Schedule of Benefits of this certificate. Benefits will not pay past the day the insurance expires or terminates. The amount of disability insurance does not include any delinquent, deferred or extended payment(s) or any other subsequent loan agreement modifications, payments or unearned interest. (Emphasis added.)
The "Monthly Benefit" designated on the "Schedule of Benefits" portion of the certificate is $429.85. While the policy makes no specific reference to the 60th payment being a balloon payment, it is clear from the limits of the liability portion of the policy that Mr. Wallace was seeking credit insurance for the total debt due. While First Assurance asserts that the "Initial Amount of Insurance" is only applicable to the credit life portion of the policy and not the credit disability portion, the contract itself is not unequivocal in that regard.
First, the disability benefit provisions quoted above make reference to the "Initial Amount of Insurance" referred to in the "Schedule of Benefits," which suggests that said amount was applicable to the disability portion of the policy. Further, nothing in the policy explicitly provides that the "Initial Amount of Insurance" on the "Schedule of Benefits" is only applicable to the credit life coverage being purchased. Finally, First Assurance's argument that Mr. Wallace was only insured for a term of 60 months at the rate of $429.85 asks us to assume that he insured himself in the event of his inability to pay this debt because of disability for $9,008 less than if he became unable to pay the debt because of his death.
It is well settled that the laws of conventional contract apply to insurance policies and that the interpretation of a contract is the determination of the common intent of the parties. Schroeder v. Board of Supervisors of Louisiana State University, 591 *380 So.2d 342 (La.1991). While we see no public policy which would prevent the parties from agreeing to the contractual limitations suggested by First Assurance, we decline to attribute this paradoxical intent to the parties' agreement in the absence of clear language to that effect. Accordingly, we find that the policy language is ambiguous as to the amount of coverage intended by the parties regarding the credit disability portion of the policy.
Where an ambiguity remains even after methods of contractual interpretation are employed, the ambiguity is to be construed against the drafter and in favor of the insured. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the contract at the time the insurance contract was entered. Breland v. Schilling, 550 So.2d 609 (La.1989). For help in ascertaining how such a purchaser would have construed the contract at the time, we look to the circumstances surrounding the application for and issuance of the coverage.
While parol evidence generally is not to be used to vary or alter the terms of a contract, it may be admitted when the provisions of a written contract are susceptible to more than one interpretation, or there is ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed. McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280. In his deposition testimony, Mr. Wallace testified about his understanding regarding the policy of insurance as follows:
Q: But your understanding and what you took this document to mean was that if you died the life insurance would pay the note off entirely?
A: Right.
Q: Or if you became disabled and couldn't work anymore
A: It would pay it off.
Q: that it would pay off the truck?
A: Yes.
Mr. Wallace applied for financing of his truck and the insurance on the extension of credit through the same employee of Interstate Dodge. The dealership was listed as the insurance agent on the insurance application. In preparing the retail installment contract for the financing, Interstate Dodge, through its employee, completed subsection 10 entitled "Optional Credit Insurance" by selecting the disability insurance option and indicating that said insurance would pay Mr. Wallace's debt on the contract up to $34,799. While the contract is clear that the insurance is not being provided thereunder and that a separate application would have to be completed, the contract indicates that both Mr. Wallace and Interstate Dodge understood the insured to be seeking coverage on the full amount of the debt. Considering the entirety of the policy and the intent of the parties, we, therefore, conclude that the credit disability insurance extends coverage for the full extent of the initial insurance amount or $34,799. Accordingly, we find that the trial court properly granted summary judgment in favor of Mr. Wallace.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Plaintiff, John R. Wallace, Sr., and against Defendant, First Assurance Life of America, is affirmed. Costs of this appeal are assessed against Defendant/Appellant, First Assurance Life of America.
AFFIRMED.