942 So.2d 620 (2006)
Lee Roy JOYNER, M.D., Plaintiff-Applicant,
v.
Samuel F. LIPRIE, et al., Defendants-Respondents.
No. 41,535-CW.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2006.
*621 Sedric E. Banks, Monroe, for Plaintiff-Applicant.
Shotwell, Brown & Sperry by George Wear, Jr., Monroe, for Defendant-Respondent, Interventional Therapies, LLC.
McLeod Verlander by David E. Verlander, III, Monroe, Adams & Reese by Mary L. Meyer, Gregory F. Rouchell, New Orleans, for Defendants-Respondents, Advantage Capital Corporation, Crichton Brown, and Gerald J. Daigle, Jr.
Abbott, Simses & Kuchler by Lawrence E. Abbott, Amy L. Maccherone, André E. Maillho, Covington, for Defendant-Respondent, Tyco International Ltd.
Borne & Wilkes by Keith M. Borne, Lafayette, for Defendants-Respondents, Samuel F. Liprie, Dr. Mark Harrison, Angiorad, LLC, and Angiorad, Inc.
Hudson, Potts & Bernstein by W. Craig Henry, Monroe, Vinson & Elkins by D. Ferguson McNiel, for Defendant-Respondent, United States Surgical Corporation.
Before WILLIAMS, GASKINS and MOORE, JJ.
GASKINS, J.
This case is assigned to Civil Section 3 in the Fourth Judicial District Court. Judge Alvin Sharp was assigned to that section, but on January 1, 2006, he rotated into another section. The plaintiff requested that this case be transferred to the new section with Judge Sharp. Both Judge Sharp and the judge rotating into Civil Section 3, Judge Benjamin Jones, ruled that the case should remain in its assigned section. The plaintiff applied to this court for supervisory writs. The writ was granted and the matter was docketed. Finding no abuse of discretion by the trial court, we recall the writ as improvidently granted.

FACTS
In 1996, the plaintiff, Dr. Lee Roy Joyner, filed two law suits in the Fourth Judicial District Court (JDC), No. 96-0541 and 96-0542.[1] The instant matter arises from No. 96-0541.
The Fourth JDC in Ouachita and Morehouse parishes has nine district court judges; each judge is elected to a division. A 2000-2001 court committee analyzed whether the judges should go to a civil/criminal section system. The judges chose to do so and requested that the legislature pass a statute to allow the change.[2]
In 2001, La. R.S. 13:587.2 was enacted to allow the Fourth JDC to assign its divisions to either a criminal, civil, drug, juvenile or other section. It also provided that no division could be assigned to a particular section for more than three years without the division's consent. In implementing this new discretionary authority, the Fourth JDC created four numbered sections with two divisions assigned to each sectionone judge in each section being the criminal judge and the other being the civil judge. The ninth division *622 was assigned to a separate juvenile section.
Rule 3.1 of the Fourth JDC, as amended effective January 9, 2004, outlines this system:
The Judges of the Court are divided into Section 1, Section 2, Section 3, Section 4, and the Juvenile Section. Two Judges are assigned to each numbered Section. One Judge in each numbered Section, hereinafter referred to as the criminal judge, shall primarily handle criminal matters and the other Judge in the same numbered Section, hereinafter referred to as the civil judge, shall primarily handle civil matters. The Judge in the Juvenile Section shall primarily handle juvenile matters. All Judges retain general jurisdiction. Rotations of primary duties within each Section shall be in accordance with the Court Schedule published annually and posted to the Court web site www.4jdc.com, and in the office of the Clerk of Court.
To avoid confusion and for judicial economy, when the initial division into criminal/civil Sections occur on January 1, 2002, and later when Divisions rotate in and out of civil/criminal Sections, each Division may keep any case originally assigned to it, including but not limited to cases where testimony has been taken or substantial hearings held. All criminal probation violation hearings will be heard by the sentencing judge.
Rule 9.4 of the Fourth JDC provides, in relevant part, for random initial allotment to a section:
All initial petitions must be presented to the Clerk of Court for random allotment to a Section. Thereafter, the civil judge assigned to the Section will act on all filings requiring orders or settings.
Every two years, the judges decide whether to rotate. Usually this decision involves the two judges partnered together in a section deciding whether to rotate between the civil and criminal courts. If the judges agree, they can switch courts, rotating from civil to criminal or vice versa. Likewise, they may choose not to rotate. In addition to rotations within a section, there are also rotations between sections. The partnering of the various judges or divisions within sections changes periodically. For example, should the judge in the juvenile court section choose to rotate from that section, that judge would rotate into a civil/criminal section and another judge would rotate into the juvenile court section.
Under the new system, Judge Alvin Sharp was assigned to Civil Section 3, where he remained until December 31, 2005. Judge Sharp was partnered in Section 3 with Judge Benjamin Jones. At the time of the section rotation on January 1, 2004, no changes were made in Section 3. However, at the time of the rotation on January 1, 2006, Judge Sharp moved to Civil Section 4 and Judge Jones went from Criminal Section 3 to Civil Section 3.
The instant case was assigned to Civil Section 3. At an October 2005 status conference, Judge Sharp informed the litigants of the upcoming change and directed them to furnish the court with a "written position" about his division maintaining the case after December 31, 2005. On December 5, 2005, counsel for several of the defendants (Samuel Liprie, Mark Harrison and Angiorad, LLC) requested that the case remain in its present assigned section and be adjudicated by the judge taking over the section.
On December 8, 2005, the plaintiff filed a rule to show cause, objecting to the case being handled by a judge other than Judge Sharp. He asserted that the defendants were essentially being allowed to "judge shop" in violation of La. C.C.P. art. 253.2 *623 and Rule 9.2 of the Louisiana District Court Rules. In a record entry and order on December 13, 2005, Judge Sharp stated that he was being "cautious" in not "picking and choosing" cases to take to a different section. He held that the case would remain as currently assigned in Civil Section 3 pending a hearing or determination by the division of court seated in Civil Section 3 in 2006 as to whether justice required the case be conclusively adjudicated by him in Civil Section 4.
On February 10, 2006, the plaintiff filed a motion requesting, among other things, a hearing to determine who would be the trial judge for the case. A hearing was held on April 26, 2006, before Judge Jones. Chief Judge Marcus Clark of the Fourth JDC testified about the court rules and procedures for assigning cases. At the conclusion of Judge Clark's testimony, Judge Jones ruled that the case would stay as assigned with Civil Section 3. Judgment was signed in conformity with this ruling in May 2006. The plaintiff filed the instant writ application. The writ was granted to docket on June 23, 2006.

LAW
La. C.C.P. art. 253.1 provides:
All pleadings filed shall be randomly assigned to a particular section or division of the court by either of the following methods:
(1) By drawing indiscriminately from a pool containing designations of all sections or divisions of court in the particular jurisdiction in which the case is filed.
(2) By use of a properly programmed electronic device or computer programmed to randomly assign cases to any one of the sections or divisions of court in the particular jurisdiction in which the case is filed.
La. C.C.P. art. 253.2 states:
After a case has been assigned to a particular section or division of the court, it may not be transferred from one section or division to another section or division within the same court, unless agreed to by all parties, or unless it is being transferred to effect a consolidation for purpose of trial pursuant to Article 1561. However, the supreme court, by rule, may establish uniform procedures for reassigning cases under circumstances where an expeditious disposition of cases may be effectuated.
Rule 9.2 of the Louisiana District Court Rules provides, in relevant part:
Except as allowed by La.Code Civ. Proc. art. 253.3, all contested matters must be heard by the judge to whom the matter was allotted. If all parties and the court receiving the matter consent, a judge other than the one allotted the action may hear the matter.
In pertinent part, Rule 9.3 of the Louisiana District Court Rules states:
All pleadings filed shall be randomly assigned to a particular section or division of the court in accordance with La.Code Civ. Proc. art. 253.1 before presentation of a pleading to any judge. The method of allotment for each district court is set forth in Appendix 3.

DISCUSSION
In support of his position that Judge Jones' ruling violated the requirement of random assignment of cases, the plaintiff cites State v. Sprint Communications Company, L.P., 96-3094 (La.9/9/97), 699 So.2d 1058.
In State v. Sprint Communications Company, L.P., a judge of the 18th Judicial District Court transferred two class action asbestos cases to another judge who "was more experienced in class action lawsuits." It was asserted that the transfers *624 were made in the interest of "judicial economy and case management." While the original assignments of the cases were random, the later transfers were not. The Louisiana Supreme Court found that these nonrandom interdivisional transfers violated La. C.C.P. art. 253.1, Local Rule 9 of the 18th JDC, and public policy. It held that transfers that permit judges to circumvent the random allotment process to funnel particular types of cases to one judge violate the spirit and purpose of La.C.C.P. art. 253.1. The deliberateness of the transfers and the failure to comply with the random allotment system provided in Rule 9 resulted in a violation of that rule which made the transfers void and unenforceable.
In its conclusion, the supreme court stated:
Swapping or transferring a case is impermissible where a judge simply feels uncomfortable with a lawyer, a party, or a particular type of litigation. Transfers that circumvent the random allotment process to funnel particular types of cases to one judge are similarly inappropriate and impermissible. A practice of case swapping among judges which permits non-random transfers after initial random allocation, encourages "judge shopping," which we have declared a problem.
Several groups of defendants oppose the plaintiff's position. They include Samuel Liprie, Dr. Mark Harrison, Angiorad, Inc., and Angiorad, LLC; Interventional Therapies, LLC; United States Surgical Corporation; Tyco International Ltd.; and Crichton Brown, Gerald J. Daigle, Jr., and Advantage Capital Corporation. They argue that Judge Jones' decision to keep the case in Civil Section 3 was proper under La. C.C.P. art. 253.2, asserting that once a case is randomly allotted to a particular section of court, it cannot be transferred from that section unless all of the parties agree. Several defendants argue that the plaintiff's attempt to keep the case with Judge Sharp amounts to judge or forum shopping.
La. C.C.P. art. 253.1, La. C.C.P. art. 253.2, and Rule 9.3 of the Louisiana District Court Rules provide for cases to be randomly assigned to a division or a section. Under the rules currently in place in the Fourth JDC, cases are randomly assigned to a section. The rotation system provides for divisions (or judges) to periodically rotate among the sections. When a judge rotates from a section, the usual practice is for the majority of cases to remain in the section to be handled by the judge rotating into it. A case following the judge is the exception to the rule. However, the court rules permit a judge to keep a case in order to avoid confusion and for judicial economy. While a case may be kept if "testimony has been taken or substantial hearings held," Chief Judge Clark of the Fourth JDC testified that a case may be kept if, in view of the totality of circumstances, switching it would not serve the interest of justice or judicial economy.
When the Fourth JDC was allowed to implement a rotating criminal/civil section system, the instant case was assigned to Civil Section 3. At the beginning of 2006, Judge Alvin Sharp rotated from Civil Section 3 as permitted by the court rules. He elected not to exercise his discretion to take the case with him. Additionally, there was no unanimous agreement among the parties for a transfer from the assigned section, as required by La. C.C.P. art. 253.2. Judge Jones, who rotated into Civil Section 3, ruled that the case should remain in the section to which it had been assigned.
The record does not reveal any compelling reason mandating that the case be conclusively adjudicated by Judge Sharp. While the case had been assigned to Judge *625 Sharp for several years, the record shows that many of the defendants were only added in 2005. No proceedings involving the taking of substantial testimony had taken place which would have required that the case stay with Judge Sharp as a matter of judicial economy.
We find that, under the circumstances present in the instant case, allowing the case to remain in its assigned section instead of following the division or judge into a different sectioncomports with the provisions of La. C.C.P. art. 253.2 and the dictates of the Sprint case which prohibits nonrandom interdivisional transfers. The situation here does not involve the deliberate reassignment of particular cases which alarmed the supreme court in the Sprint case. Rather, it concerns an ordinary and normal section rotation which causes a different judge to preside over the cases assigned to a section as a routine matter of course.

CONCLUSION
Finding no abuse of discretion in the trial court's decision, we recall the writ as improvidently granted. Costs are assessed against the plaintiff, Dr. Lee Roy Joyner.
WRIT RECALLED AS IMPROVIDENTLY GRANTED.
NOTES
[1] See Joyner v. Liprie, 39,342 (La.App.2d Cir.3/11/05), 896 So.2d 363, which involved No. 96-0542.
[2] In 2002, Rule 3.1 of the Louisiana District Court Rules was adopted as to district courts splitting into divisions or sections. It provided, in relevant part: "Courts may by en banc order divide into divisions or sections for the purpose of allotting matters within the court's jurisdiction."