ROSEMARY LEDET, Judge.
11 This case has a complex procedural background involving four separate, but interrelated lawsuits. This case originated as a bank’s action to collect on a continuing guaranty. The bank, First Bank and Trust (“FB & T”), ultimately obtained a judgment against the continuing guarantor, Norbert A. Simmons. After FB & T began enforcing the judgment in Florida (the state where Mr. Simmons resided), Mr. Simmons filed two suits in the Civil District Court for Orleans Parish (“CDC”) seeking to annul the judgment. The present dispute between the parties stems from the trial court’s rulings in those suits on the following matters: (i) Mr. Simmons’ motions to transfer his two suits from the divisions of CDC to which they were randomly allotted to the division in which the judgment was rendered; (ii) Mr. Simmons’ motion to consolidate his second suit with the judgment suit; (iii) FB & T’s declina-tory exception of lis pendens filed in Mr. Simmons’ second suit, which was based on Mr. Simmons’ first suit; and (iv) the issuance of a preliminary injunction in Mr. Simmons’ second suit against the enforcement of the judgment.
|?To provide a framework for analysis, we begin by setting forth a brief description of each of the four pertinent suits between the parties, which is as follows:
1. First Bank and Trust v. Norbert A Simmons, CDC No. 2010-09750, allotted to Division “I.” This suit was filed on September 20, 2010, and was entitled “Petition for Breach of Guaranty Agreement” (the “Collection Suit ”). On January 14, 2011, a judgment was rendered confirming a default in this suit against Mr. Simmons.
2. Norbert A. Simmons v. First Bank and Trust and Joseph C. Canizaro, CDC No. 2014-01475, allotted to Division “A.” This suit was filed on February 11, 2014, and was entitled “Petition for Damages and Declaratory Judgment” (“Simmons Suit One ”). In 2014, Simmons Suit One was transferred to Division “I.”
3. Edward Neely and Sheryl Neely v. First Bank and Trust, CDC No. 2014-03225, allotted to Division “A.” This suit was filed on March 31, 2014, and was entitled “Petition for Declaratory Judgment” (the “Nee- *1027 lys’ Suit”). Mr. Simmons filed a petition for intervention in this suit (the “Intervention ”).
4. Norbert A. Simmons v. First Bank and Trust, CDC No. 2014-06211, allotted to Division “C.” This suit was filed on June 24, 2014, and was entitled “Petition to Annul Judgment” (“Simmons Suit Two ”). In 2014, Simmons Suit Two was transferred to Division “I” and consolidated with the Collection Suit.
Three of the four suits are presently before us for consideration; the suit that is not before us is the Neelys’ Suit.
In Simmons Suit One, FB & T[1] filed a writ application seeking review of the trial court’s interlocutory judgments transferring Simmons Suit One from Division “A” to Division “I” of CDC, and denying its motion to vacate the order of transfer (our case No. 2014-C-1101). In Simmons Suit Two (which has now been consolidated with the Collection Suit), FB & T filed both a writ application and an | ¡¡appeal. In its writ application, FB & T sought review of the trial court’s interlocutory judgment overruling, in part, its exception of lis pen-dens and its judgment ordering that Simmons Suit Two be transferred from Division “C” to Division “I” and consolidated with the Collection Suit (our case No. 2014-C-l 100). In its appeal, FB & T sought review of the trial court’s grant of Mr. Simmons’ request for a preliminary injunction (our case Nos. 2014-CA-1210 c/w 2014-CA-1211). This court, granting FB & T’s motion, consolidated the two writ applications and then consolidated the two writ applications with the appeal for decision.
For the reasons that follow, we deny FB & T’s writ application in Simmons Suit One. We grant in part FB & T’s writ application in Simmons Suit Two and reverse the trial court’s ruling, denying in part of FB & T’s exception of lis pendens; otherwise, we deny FB & T’s writ application. Given our finding that FB & T is entitled to the dismissal without prejudice of Mr. Simmons’ suit in Simmons Suit Two, we dismiss FB & T’s appeal as moot and remand for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
On February 11, 2008, Mr. Simmons executed a continuing guaranty in FB & T’s favor (the “Guaranty”).[2] At the time the Guaranty was signed, Mr. Neely |4had one existing loan with FB <⅞ T; he was preparing to enter into another loan with FB &T.
On January 29, 2008, two weeks before Mr. Simmons signed the Guaranty, Mr. Neely entered into the first loan with FB & T (“Loan One”). The promissory note for Loan One was signed not only by Mr. Neely, but also by his mother, Sheryl Nee *1028 ly (Mr. Simmons’ sister) (collectively “the Neelys”).[3] The purpose for Loan One was to consolidate the Neelys’ debt on multiple (seven) properties. The mortgage in connection with Loan One encumbered several properties.
On the day after the Guaranty was executed, February 12, 2008, Mr. Neely entered into the other loan with FB & T (“Loan Two”). The purpose for Loan Two was to purchase immovable property located at 1141 Robert E. Lee Boulevard in New Orleans, Louisiana. The promissory note for Loan Two was signed only by Mr. Neely. The mortgage in connection with Loan Two encumbered only the Robert E. Lee Boulevard property.
The Neelys defaulted on Loan One. In response, on September 20, 2010, FB & T filed the Collection Suit against Mr. Simmons. According to FB & T’s petition in the Collection Suit, Mr. Simmons signed the Guaranty in which he “absolutely and unconditionally guaranteed” payment of “all past, present, and future obligations” owed to FB & T by the Neelys. In the Collection Suit, FB & T alleges that the Neelys defaulted on the note for Loan One and that as of |5September 17, 2010, the payoff amount of the note was $1,134,572.49, not including other fees that continued to accrue daily.[4] The Collection Suit was served on Mr. Simmons via the Louisiana Long Arm Statute, La. R.S. 13:3201-3207 (the “LAS”).[5] A default was entered against Mr. Simmons. On January 14, 2011, the trial court confirmed the default and rendered judgment against Mr. Simmons in the Collection Suit. Notice of the judgment was mailed to Mr. Simmons, but he failed to file a motion for new trial or an appeal. Hence, the judgment became final.
Mr. Neely also defaulted on Loan Two. On January 26, 2011, FB & T commenced an executory proceeding against Mr. Neely as to the property securing Loan Two— the Robert E. Lee Boulevard property. Thereafter, FB & T and the Neelys entered into negotiations. As a result of the negotiations, on August 29, 2011, FB & T and the Neelys entered into a Forbearance Agreement, which was silent regarding Mr. Simmons’ obligations under the Guaranty.
| ¿Thereafter, FB & T recorded and began enforcing the judgment in Florida, where Mr. Simmons resided.[6] On Febru *1029 ary 11, 2014, Mr. Simmons filed Simmons Suit One in CDC. In this suit, he named as defendants FB & T and Joseph C. Canizaro, FB & T’s chairman of the board. In Simmons Suit One, Mr. Simmons made the following factual allegations:
■ Edward Neely asked Mr. Simmons to provide a continuing guaranty specifically regarding the Robert E. Lee property only. Mr. Simmons agreed to provide a continuing guaranty for the purchase of this property only.
• Mr. Simmons never received notice of this suit [the Collection Suit ] and did not have the opportunity to address the substantive allegations contained in that petition.
• Mr. Simmons did not sign this continuing guaranty [that purports to cover all loans whatsoever from FB & T to the Neelys].[7]
|7- [I]n violation of the Forbearance Agreement, FB & T and/or Mr. Caniza-ro had sought to enforce in Florida the judgment it obtained against Mr. Simmons in Louisiana attempting to seize his assets and attempting to place liens on his property [in Florida], all the while collecting payment from the Nee-lys under the Forbearance Agreement.
• Mr. Simmons contacted Mr. Canizaro after FB & T’s judgment was registered in Florida, and FB & T began attempting to [seize] Mr. Simmons’ assets there.
• Mr. Simmons told Mr. Canizaro he had never been served with the lawsuit regarding the continuing guaranty and that he was very often not at his home in Miami, Florida.
• Mr. Canizaro seemed surprised that FB & T was attempting to seize Mr. Simmons’ assets when the Neelys were in compliance with the terms and conditions of the Forbearance Agreement. Mr. Canizaro told Mr. Simmons that, so long as the Neelys were in compliance with the Forbearance Agreement, FB & T should not be attempting to collect on the judgment relative to the continuing guaranty Mr. Simmons allegedly executed.
• Mr. Canizaro further assured Mr. Simmons that he would put a stop to any collection efforts to the extent they were still ongoing by FB & T.
*1030 • [DJespite these assurances to Mr. Simmons, Mr. Canizaro ordered FB & T to continue to attempt to seize Mr. Simmons’ assets and lien Mr. Simmons’ property in Florida.
• FB & T has provided no accounting of the application of the funds seized from Mr. Simmons to the Neelys’ indebtedness to either the Neelys or Mr. Simmons.
Based on the above allegations, Mr. Simmons asserted the following nine causes of action in Simmons Suit One: (1) breach of Forbearance Agreement,[8] (2) fraud or intentional misrepresentation, (3) fraud in the inducement, (4) negligence, (5) negligent misrepresentation, (6) promissory es-toppel, (7) unjust enrichment, (8) novation,[9] and (9) declaratory relief.
IsThe ninth cause of action was a request for the trial court to order that the Guaranty was unenforceable and that the judgment obtained based on it was null and void. Particularly, the declaratory relief sought in the petition was for the court' to order “the continuing guaranty relied upon by [Mr.] Canizaro and/or FB & T in seeking and being awarded a default judgment against Simmons unenforceable, and the default judgment null and void.” In addition, Mr. Simmons requested injunctive relief, which he expressly excluded from his request in the petition for a jury trial. The injunctive relief he requested was a judgment by the trial court that “all ongoing attempts by [Mr.] Canizaro and/or First Bank and Trust to seize Mr. Simmons’ assets or lien his property cease and no further attempts by [Mr.] Canizaro and/or First Bank and Trust in this regard occur in the future.”
In response to Simmons Suit One, FB & T filed exceptions of no cause of action and res judicata. Its exception of no cause of action was based on the Louisiana Credit Agreement Statute, La. R.S. 6:1121— 1124.[10] Its exception of res judicata was based on the judgment, which it contended precluded all claims regarding the enforceability and validity of the Guaranty. Based on the exceptions, FB & T contended that the only claim made in the petition in Simmons Suit One that could remain was Mr. Simmons’ ninth cause of action for declaratory relief that the judgment rendered against him was a nullity; it contended that the petition |9should be dismissed except for the nullity of judgment claim. In its exceptions, FB & T specifically reserved its right to assert any and all exceptions and defenses as related to the nullity of judgment claim.
On March 31, 2014, before the exceptions in Simmons Suit One were heard, the Neelys filed their own suit against FB & T — the Neelys’ Suit. In their suit, the Neelys alleged that FB & T had breached, or was planning to breach, the Forbearance Agreement. On May 6, 2014, Mr. Simmons filed an intervention in the Nee-lys’ Suit — the Intervention. In the Intervention, Mr. Simmons named as defendants FB & T, Mr. Canizaro, and the Neelys, seeking indemnity from Mr. Nee *1031 ly. According to FB & T, the Intervention was an almost verbatim recitation of the claims asserted in Simmons Suit One. In response to the Intervention, FB & T reasserted the same exceptions it filed in connection with Simmons Suit One; in addition, it filed an exception of lis pen-dens.[11]
On June 24, 2014, Mr. Simmons filed Simmons Suit Two, which was captioned a “Petition to Annul Judgment.” In this suit, Mr. Simmons named as defendant only FB & T. In his petition in Simmons Suit Two, Mr. Simmons made the following averments:
• Petitioner has not voluntarily acquiesced in the judgment and was not present in Orleans Parish when the judgment was rendered.[12] Additionally, petitioner has not waived his objection to jurisdiction.
|in- Vice of Form [La. C.C.P. art. 2002]— Petitioner was not legally cited to appear and made no appearance in the proceedings in the above captioned action .... Because of the failure of First Bank to comply with the strict requirements of LSA-R.S. 13:3204 [the LAS,] the petitioner has suffered the deprivation of the legal right to appear and challenge the claims of FB & T and otherwise assert a defense to said claims.[13]
•Vice of Substance (Fraud & Ill Practices) [La. C.C.P. art. 2004] — Mr. Simmons did not guarantee] the loan agreement that is the subject matter of the judgment that FB & T was attempting to execute against the petitioner in the State of Florida [Loan One].[14] ... FB & T had not credited Mr. Simmons for the payments received from the Neelys [under the Forbearance Agreement.]
*1032 In Simmons Suit Two, Mr. Simmons also sought a temporary restraining order (“TRO”) to prevent FB & T from taking further steps in the execution and enforcement (collection efforts) of the judgment in the Collection Suit, as well as preliminary and permanent injunctive relief. Finally, he requested a new trial.
Contemporaneously with the allotment of Simmons Suit Two, Mr. Simmons filed an ex parte motion to transfer Simmons Suit Two from Division “C” — the division to which it was randomly allotted — to Division “I” — the division to which luthe Collection Suit was originally allotted. He contended that the suit should be transferred because the petition in Simmons Suit Two sought to annul the judgment rendered in the Collection Suit. A transfer order was signed that same day by the judges of both divisions “C” and “I.”
In Simmons Suit Two, the trial court in Division “I” subsequently granted Mr. Simmons’ request for a TRO, ordering that FB & T be restrained from undertaking or continuing the prosecution of any collection efforts against Mr. Simmons in regards to the January 14, 2011 judgment in the Collection Suit. The trial court also set a preliminary injunction hearing for July 2, 2014, ordering that the application was “to be heard upon the verified pleadings and/or supporting affidavits only.” See La. C.C.P. art. 3609.
On June 25, 2014, Mr. Simmons filed a motion in the Collection Suit to consolidate that suit with Simmons Suit Two. FB <& T filed an opposition to the motion to consolidate and a motion to vacate the order of transfer. On June 26, 2014, FB & T filed a declinatory exception of lis pendens in Simmons Suit Two, which was the first pleading FB & T filed in that suit.[15] Meanwhile, Mr. Simmons filed an ex parte motion to transfer Simmons Suit One from Division “A” to Division “I,” asserting that both the Collection Suit and Simmons Suit Two were pending in that division. FB & T filed an opposition, contending that the Collection \^Suit had been reduced to judgment and that it was no longer pending; hence, it contended that it would be impossible to consolidate the Collection Suit and Simmons Suit One for trial. The trial court ordered that the motion to transfer be heard on the same date as the preliminary injunction and the other motions.
On July 2, 2014, a hearing was held on both the preliminary injunction and the various motions. In the Collection Suit, the trial court granted Mr. Simmons’ motion to consolidate that case with Simmons Suit Two. In Simmons Suit One, the trial court granted the motion to transfer the suit from Division “A” to Division “I.”[16] In Simmons Suit Two, the trial court denied the motion to vacate the order trans *1033 ferring the ease from Division “C” to Division “I.” In Simmons Suit Two, the trial court declined to dismiss the case in its entirety on the exception of lis pendens; instead, it dismissed without prejudice all claims other than those seeking nullity of the judgment in the Collection Suit. Thus, the trial court ordered that Simmons Suit Two “may proceed, as to the direct action to annul the judgment rendered against [Mr.] Simmons” in the Collection Suit; it overruled the exception of Us pendens in that respect.
In Simmons Suit Two, the trial court granted a preliminary injunction.[17] From the trial court’s judgment granting the preliminary injunction in Simmons Suit Two, [1SFB & T appeals. As noted, FB & T also filed two applications for supervisory writ, seeking review of the trial court’s related interlocutory rulings. We thus have before us for decision two writ applications and one appeal.
DISCUSSION
Although FB & T raises multiple issues in its appeal and writ applications, we find the following two issues dispositive: (i) whether the trial court erred in transferring Simmons Suit One and Simmons Suit Two to the division in which the Collection Suit was originally allotted and consolidating Simmons Suit Two with the Collection Suit; and (ii) whether the trial court erred in overruling in part | UFB & *1034 T’s exception of lis pendens in Simmons Suit Two. Our resolution of these two issues renders it unnecessary to reach the other issues raised in FB & T’s writ applications and appeal.[18] We separately address each of the dispositive issues.

(i) Transfer and consolidation of cases

FB & T’s argument regarding the transfer and consolidation of the cases is three-fold. First, it argues that the trial court erred by ordering the transfer of Simmons Suit Two from Division “C” to Division “I” (and by refusing to vacate that order). Second, it argues that the trial court erred by consolidating Simmons Suit Two with the Collection Suit. And, third, it argues that the trial court erred by ordering the transfer of Simmons Suit One from Division “A” to Division “I.”
The issues presented in this case regarding the transfer and consolidation of cases are questions of law. Questions of law are reviewed by appellate courts de novo “without deference to the legal conclusions of the courts below.” Durio v. Horace Mann Ins. Co., 11-0084, p. 14 (La.10/25/11), 74 So.3d 1159, 1168; see also Jackson v. Pfeifer, 13-0440, 13-0450, p. 4 (La.App. 4 Cir. 7/31/13), 156 So.3d 113, 116 (citing Hospitality Consultants, LLC v. Angeron, 09-1738, p. 5 (La.App. 4 Cir. 6/9/10), 41 So.3d 1236, 1240). The standard of review for an appellate court addressing a question of law is simply whether the trial court’s interpretive decision was legally correct. 727 Toulouse, L.L.C. v. Bistro at the Maison De Ville, L.L.C., 12-1014, pp. 7-8 (La.App. 4 Cir. 8/21/13), 122 So.3d 1152, 1157-58, writ denied, 13-2414 (La.1/10/14), 130 So.3d 327; Olavarrieta v. St. Pierre, 04-1566, p. 3 (La.App. 4 Cir. 5/11/05), 902 So.2d 566, 568.
Interdivisional transfers are governed by La. C.C.P. art. 253.2, which provides:
After a case has been assigned to a particular section or division of the court, it may not be transferred from one section or division to another section or division within the same court, unless agreed to by all parties, or unless it is being transferred to effect a consolidation for purpose of trial pursuant to Article 1561. However, the supreme court, by rule, may establish uniform procedures for. reassigning cases under circumstances where an expeditious disposition of cases ,may be effectuated.
Under Article 253.2, a case can be transferred to another division in only three circumstances: (i) when the parties consent; (ii) when the transfer is for consolidation for trial, as provided in La. C.C.P. art. 1561; and (iii) when a Supreme Court rule permits the transfer. See State v. Sprint Commc’ns Co., L.P., 96-3094, p. 6 (La.9/9/97), 699 So.2d 1058, 1063 (noting, albeit in the negative, the three circumstances as follows: “[i] the parties did not consent, [ii] the initial transfer was not for consolidation, and [iii] no Supreme Court rule permitted the transfers.”).[19]
*1035 |1fiIn this case, we conclude, contrary to FB & T’s contentions, that the interdivi-sional transfers were permitted by a Supreme Court rule — La. Dist. Ct. R. 9.3, App. 9.8, Civil District Court Orleans Parish (“CDC App. 9.3”) — and thus were proper under La. C.C.P. art. 253.2.[20] Explaining our finding, we address in |17steps each of FB & T’s three contentions, which are as follows: (1) because it did not consent, the transfer could only be valid if it was for consolidation for trial under La. C.C.P. art. 1561; (2) the inclusion of CDC App. 9.3 in the appendices to the uniform rules for the district courts does not dictate a different result; and (3) CDC App. 9.3, despite its inclusion in the appendices, is invalid because it does not provide a uniform rule.
The first step is FB & T’s argument that because it objected, the transfers could only be valid under La. C.C.P. art. 253.2 if the transfers were for consolidation for trial under La. C.C.P. art. 1561, which provides in pertinent part:
When two or more separate actions are pending in the same court, the section or division of the court in which the first filed action is pending may order consolidation of the actions for trial after a contradictory hearing, and upon a finding that common issues of fact and law predominate, and, in the event a trial date has been set in a subsequently filed action, upon a finding that consolidation is in the interest of justice. The contradictory hearing may be waived upon the certification by the mover that all par *1036 ties in all cases to be consolidated consent to the consolidation.
La. C.C.P. art. 1561(A) (Emphasis supplied). In support, FB & T cites In re Dendinger, 99-1624 (La.App. 4 Cir. 7/21/99), 766 So.2d 554.[21]
According to FB & T, the trial court erred in concluding that it could transfer two of Mr. Simmons’ cases, and consolidate one of them, based on the fact that the Collection Suit was the first-filed case. Given the Collection Suit was reduced to a final judgment in 2011, FB & T submits that the Collection Suit was no longer 11R“pending” in 2014 and no longer susceptible of being consolidated for trial pursuant to La. C.C.P. art. 1561. FB & T argues that “[a] case that has been resolved by final judgment cannot be consolidated with a case that has not been resolved by final judgment.”
FB & T’s argument poses the question of whether a pending case can be consolidated with one that is not still pending. It unnecessary in this case to address that question since it is based on the assumption that the transfers were pursuant to La. C.C.P. art. 1561, which includes the “pending” language.[22] The transfers were not pursuant to La. C.C.P. art. 1561; rather, the transfers were pursuant to CDC App. 9.3, which provides for transfer to the earlier case in the division in which the original case was allotted “whether or not such earlier ease is still pending.” For the same reason, FB & T’s reliance on the Dendinger case is misplaced. As Mr. Simmons points out, unlike the Dendinger case, this case involves a district court rule that specifically requires suits to annul a judgment be “transferred to the division to which the original case was allotted.”[23]
11sThe next step in FB & T’s argument is its contention that CDC App. 9.3 — insofar as it provides for the transfer to a division in which there is no longer a pending case-conflicts with two statutory provisions— La. C.C.P. art. 253.1, which provides that *1037 all “pleadings filed shall be randomly assigned to a particular section or division of the court,” and Article 253.2, quoted above. FB & T contends that a district court’s enactment of a local rule cannot override La. C.C.P. arts. 253.1 and 253.2. In support, FB & T cites State v. Cooper, lb-2344 (La.11/16/10), 50 So.3d 115, for the propositions that random allotment is a statutory requirement and that statutory requirements “trump both the uniform rules, and the district court rules found in the appendices.” FB & T thus contends that CDC App. 9.3 — the CDC local rule in the appendices providing for the re-allotment between divisions (transfer) of cases growing out of earlier cases such as a petition for nullity — is invalid.
FB & T’s argument is based on the well-settled principle that a local rule cannot override a statutory enactment. See Rodrigue v. Rodrigue, 591 So.2d 1171 (La.1/10/92) (holding that local rules of court cannot conflict with legislation). In this case, however, FB & T’s argument is belied by the Supreme Court’s promulgation, pursuant to the last sentence of La. C.C.P. art. 253.2, of La. Dist. Ct. R. 9.3,[24] which provides:
| pqAII pleadings filed shall be randomly assigned to a particular section or division of the court in accordance with La.Code Civ. Proc. art. 253.1 before presentation of a pleading to any judge. The method of allotment for each district court is set forth in Appendix 9.3.
Pursuant to La. Dist. Ct. R. 9.3, the CDC’s local rules for allotment of cases and transfer and consolidation are set forth in CDC App. 9.3. Hence, CDC App. 9.3 is a Supreme Court rule for reassigning case as contemplated by the last sentence of La. C.C.P. art. 253.2.
The last step in FB & T’s argument is its contention that CDC App. 9.3, despite its inclusion in the appendix to La. Dist. Ct. R. 9.3, is invalid because it does not provide a uniform rule. FB & T contends that “[t]he [Legislature did not intend, and the Supreme Court did not allow, district courts to decide in what cases they would chose to transfer cases by placing something that was not uniform, in Appendix 9.3.” Stated otherwise, it contends that the Legislature’s mandate in the last sentence of La. C.C.P. art. 253.2 “did not contemplate, and the Supreme Court rule [La. Dist. Ct. R. 9.3] does not allow, district courts to abrogate the law regarding random allotment, or transfer for the pur *1038 pose of consolidation only, by placing an entry in Appendix 9.3.”
|21FB & T additionally argues that the Legislature’s mandate to the Supreme Court in the last sentence of La. C.C.P. art. 253.2 was that it adopt “uniform rules” for the transfer of cases. FB & T acknowledges that La. Dist. Ct. R. 9.3 allows district courts to enact local rules as to the manner in which random allotment is to be accomplished and to submit them for inclusion in Appendix 9.3. FB & T, however, contends that district courts are allowed to place only “certain procedures into Appendix 9.3.” FB & T contends that “allowing each district court to decide for itself how ... cases should be transferred or consolidated is not a ‘uniform rule’ contemplated by C.C.P. art. 253.2.”
Contrary to FB & T’s suggestion, La. C.C.P. art. 253.2 does not refer to the Supreme Court adopting uniform rules; rather, it refers to the Supreme Court adopting uniform procedures,[25] The statutory provision states that the Louisiana Supreme Court “by rule, may establish uniform procedures.” La. C.C.P. art. 253.2.[26] Pursuant to La C.C.P. art. 253.2, the Supreme Court adopted La. Dist. Ct. R. 9.3, which refers to each district court’s own allotment rule. We find it logical to assume that the Supreme Court’s reference in La. Dist. Ct. R. 9.3 to each district court’s own allotment rule contemplates that the district courts would not all have the same allotment rules. The CDC’s allotment rule, CDC App. 9.3, codifies the | ¡^longstanding policy in that court requiring that suits for nullity of judgment be allotted to the same division that rendered the original suit.[27] The basis for this policy is that the nullity action is said to “grow out of’ the earlier case. Moreover, the CDC is not the only district court in this *1039 state that has such a local rule; the Nineteenth Judicial District Court has a similar local rule, which provides for the transfer of suits “growing out of suits or proceedings previously pending” to the division in which the original suit was docketed.[28]
| j.sThis type of local rule “provide[s] for ' automatic consolidation (by reallotment between divisions) of related cases.” 1 Frank L. Maraist and Harry T. Lemmon, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE § 10:8 (1999).[29] Allowing a nullity action that “grows out of’ a prior proceeding to be re-allotted to the division-in which the prior judgment was issued does not involve the type of re-allotment of cases that the Supreme Court cautioned against in the Sprint case. See Joyner v. Liprie, 41,535, p. 8 (La.App. 2 Cir. 11/1/06), 942 So.2d 620, 625 (addressing a similar issue and concluding that the local rules at issue did “not involve the deliberate reassignment of particular cases which alarmed the supreme court in the Sprint case.”).[30] The' facts of this case are *1040 not analogous to the scenario presented in the Sprint case in which two class actions were filed and randomly l^allotted and then assigned to a trial judge who purportedly was more experienced in class action lawsuits. Nor are the facts of this case analogous to the scenario presented in the Boh case in which twenty-eight separate suits filed by various homeowners were consolidated solely for pre-trial purposes.
Summarizing, the transfers and the consolidation at issue in this case were pursuant to CDC App. 9.3, which is a Supreme Court rule for reassigning cases contemplated by La. C.C.P. art. 253.2. Accordingly, the trial court did not err in granting the motions to transfer Simmons Suit One and Simmons Suit Two to Division “I”; denying the motion to vacate the transfer of Simmons Suit Two; and granting the motion to consolidate Simmons Suit Two and the Collection Suit.
(i) Lis pendens
The denial of an exception of lis pendens presents for review a question of law. See Glass v. Alton Ochsner Med. Found., 02-0412, p. 3 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, 405; Krecek v. Dick, 13-0804, pp. 3-4 (La.App. 4 Cir. 2/19/14), 136 So.3d 261, 264. As noted earlier, the standard of review of the appellate court in reviewing a question of law is whether the court’s interpretive decision is legally correct. 727 Toulouse, L.L.C., 12-1014 at p. 7, 122 So.3d at 1157.
The governing code article is La. C.C.P. art. 531. As amended in 1990,[31] Article 531 provides:
|j»RWhen two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all.
Since the 1990 amendment to La. C.C.P. art. 531, “the requirements for establishing lis pendens conform to the requirements of res judicata, and the test for lis pendens is whether a final judgment in the first suit would be res judicata in the subsequently filed suit.” Citizens Sav. Bank v. G & C Development, L.L.C., 12-1034, pp. 6-7 (La.App. 1 Cir. 2/15/13), 113 So.3d 1085, 1089.[32] Even before the 1990 amendment, this was referred to as a “fair test” for determining lis pendens. 1 Frank L. Maraist and Harry T. Lemmon, LOUISIANA CIVIL LAW *1041 TREATISE: CIVIL PROCEDURE § 6.5 (1999).
The jurisprudence has identified the following three requirements for lis pendens to apply:
1. Two or more suits pending.[33]
2. The suits involve the same transaction or occurrence, which can be determined on a case-by-case basis.[34]
3. The suits involve the same parties in the same capacities, and “[t]he ‘identity of parties’ prerequisite for res judicata does not mean that the parties must be 12fithe same physical or material parties, so long as they appear in the same quality or capacity.” [35]
FB & T contends that, regardless which test applies, its exception of lis pendens should have been granted and the entire second suit, Simmons Suit Two, dismissed. FB & T submits that a judgment in the First Simmons Suit — either annulling, or refusing to annul, the judgment— would be res judicata. Likewise, FB & T submits that the three requirements the jurisprudence has identified are met. First, two suits are pending — Simmons Suit One and Simmons Suit Two. Second, Simmons Suit One has one party that Simmons Suit Two does not — Mr. Cani-zaro; otherwise, the parties in both suits are the same. As to the common parties in the pending suits — FB & T and Mr. Simmons — the second requirement for lis pendens is satisfied. Third, the claims in Simmons Suit Two arise out of the same transaction or occurrence that forms the basis of the claims made in Simmons Suit One.
Although the trial court agreed in part with FB & T that the tests for Us pendens were met and partially dismissed the petition in Simmons Suit Two, the trial court disagreed in part and partially denied the exception. In this regard, the trial court, in its judgment on the exception of lis pendens, ordered as follows: ■
• [A]ny and all claims made in the above captioned matter, other than the direct action to annul the judgment rendered against Norbert A. Simmons, in [the Collection Suit ], be and the same are hereby dismissed, without prejudice, as said claims arise out of the same transaction or occurrence that forms the basis of the claims made in [Simmons Suit One ].
• The action may proceed, as to the direct action to annul the judgment rendered against Norbert A. Simmons, in [the Collection Suit ], and the Exception of Lis Pendens is overruled, as to that claim.
The trial court partially denied FB & T’s exception of lis pendens based on its finding that the suit in Simmons Suit 'One did not assert a direct action to annul the | ^judgment. The trial court orally reasoned that in order to assert a direct action for nullity, it was necessary to file a petition for nullity. The trial court thus found it significant that the petition in Simmons Suit One was entitled “Petition for Damages and Declaratory Judgment;” in contrast, the petition in Simmons Suit Two was entitled “Petition to Annul Judgment.”
To the extent the trial court relied on the caption of the first suit, we find its reliance misplaced. The caption of a *1042 pleading is not controlling; rather, courts look to the substance of the pleading. See Smith v. Cajun Insulation, Inc., 392 So.2d 398, 402, n. 2 (La.1980) (noting that it is well-settled that courts look beyond the caption, style and form of pleadings to determine from the substance of the pleadings the nature of the proceeding).[36] Nonetheless, the trial court correctly noted that a request for nullity of judgment — to the extent it is based on a relative nullity — must be brought by petition or by a direct action to annul the judgment.[37] Contrary to the trial court’s finding, Simmons Suit One, as FB & T contends, was an ordinary suit in which a nullity claim was asserted, albeit cumulated with a damages claim.
FB & T submits that when, as was done in Simmons Suit One, a suit is brought that clearly seeks a declaration that the judgment is a nullity, there is no ^prohibition against that suit, which is an ordinary proceeding, being cumulated with other claims that must use ordinary process. See La. C.C.P. art. 462.[38] In support, FB & T cites Eldred v. Fleming, 10-0794 (La.App. 4 Cir. 1/20/11), 56 So.3d 432, as an example of a case wherein a defendant was allowed to cumulate claims for a relative nullity with a claim for damages. FB & T further points out that, in Sim-mans Suit One, it neither filed an exception of improper cumulation nor an exception of no cause of action challenging the assertion of the nullity claim in that case. Instead, FB & T specifically represented to the trial court in the exceptions that it did file — no cause of action based on the Credit Agreement Statute and res judicia-ta based on the default • judgment — that Mr. Simmons’ nullity claim should survive its exceptions. Indeed, FB & T asserted that Mr. Simmons’ only viable claim in his petition in that case was his nullity of judgment claim.
Continuing, FB & T submits that all of Mr. Simmons’ claims, to the extent they are otherwise viable, should be asserted in one lawsuit — Simmons Suit One. FB & T contends that the trial court’s denial of its exception of lis pendens, if allowed to stand, will result in two lawsuits proceeding against the same defendant — FB & T — brought by the same plaintiff — Mr. Simmons — seeking to |P,flannul the same judgment — the judgment in the Collection Suit. FB & T contends that this is the exact outcome that lis pendens is designed to preclude. FB & T notes that the trial court seemed to conclude that because the petition in Simmons Suit One sought relief in addition to nullity of the judgment, Simmons Suit Two should remain *1043 stripped of anything other than the demand for nullity of judgment. FB & T, however, emphasizes that the trial court’s holding “does not strip [Simmons Suit One ] of its demand that the judgment be annulled, nor does it explain why two lawsuits, both seeking nullity of the same judgment, can be allowed to proceed.”[39] We find this argument persuasive.
To summarize, we find that there are two suits pending, that the suits are between the same parties in their same capacities,[40] and that the suits arise from the same transaction or occurrence. We thus find that the trial court erred in failing to grant FB & T’s exception of lis pendens and dismiss without prejudice Simmons Suit Two. Our finding that FB & T is entitled to dismissal of Simmons Suit Two on lanthe basis of lis pendens dictates that we vacate the preliminary injunction issued in that suit. See Calbert v. Batiste, 09-2646, p. 2, n. 3 (La.3/12/10), 31 So.3d 332 (noting that its “finding the exceptions of lis pendens were properly sustained renders all other issues moot, and therefore, we pretermit discussion of these issues.”). As another court has commented, “[o]f course, when this suit is remanded for further proceedings, the issue of injunctive relief can immediately be re-presented to the trial judge.” Slater v. Slater, 336 So.2d 965, 967 (La.App. 4th Cir.1976).[41]

DECREE

For the foregoing reasons, we reverse the trial court’s decision denying in part First Bank and Trust’s exception of lis pendens in Norbert A. Simmons v. First Bank and Trust, CDC No. 2014-06211; we grant the exception of lis pendens and dismiss the suit without prejudice. Given *1044 our dismissal of the suit, we vacate the preliminary injunction that was issued in the suit. In all other respects, we affirm the trial court’s rulings in these consolidated matters. Stated otherwise, we deny the application for supervisory writs in our case No. 2014-C-1101; grant the application for supervisory writs in part and deny in part in our case No. 2014-C-1100; and vacate the preliminary injunction and thus dismiss as moot the appeal in |s1our case Nos. 2014-CA-1210 c/w 2014-CA-1211. Finally, we remand to the trial court for further proceedings consistent with the view expressed in this opinion.[42]
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

. In Simmons Suit One, both FB & T and Joseph Canizaro (FB & T's chairman of the board) are defendants, relators on the writ application, and appellants on the appeal. For ease of reference, we refer singularly to FB & T as the defendant, relator, and appellant.

. The Guaranty states that ,v[t]his is a 'continuing guaranty’ under which [Mr. Simmons] agree[s] to guarantee the full and punctual payment and satisfaction of the indebtedness of borrower to lender, now existing or hereinafter arising or acquired on an open and continuing basis.” Moreover, the Guaranty states that it covers "any and all present and future loans, loan advances, extensions, of credit, obligations and/or liabilities that Borrower individually or collectively or interchangeably with others owes or will owe or incur in favor of Lender whether direct or indirect ... whether Borrower may be liable individually, jointly or solidarity with others .... ” In the Guaranty, the term "Borrower” is defined as "EDWARD NEELY [Mr. Simmons' nephew] and includes all co-signers and co-makers signing the notes and all their successors and assigns.”

. In its writ applications and appeal, FB & T refers to Ms. Neely as Mr. Neely’s wife. This reference is an apparent oversight. As correctly averred in the Collection Suit, Ms. Neely is Mr. Neely’s mother.

. FB & T asserted that it provided notice to Mr. Simmons of the Neelys’ default and that it demanded payment pursuant to the Guaranty on two separate occasions. First, on June 17, 2010, FB & T notified Mr. Simmons and Mr. Neely of the default and demanded payment by certified mail. Second, on September 3, 2010, FB & T sent Mr. Simmons a second demand for payment; however, Mr. Simmons failed to pay any amount, breaching the terms of the Guaranty.

. As noted elsewhere in this opinion, Mr. Simmons contests the validity of that service in Simmons Suit One and Simmons Suit Two. The gist of his argument, as outlined in detail in Simmons Suit Two, is that service was not properly effected on him pursuant to the LAS and that the affidavit of service provided by FB & T, which evidences the LAS service, is insufficient. ' In Simmons Suit One, he averred that "he had never been served with the lawsuit regarding the continuing guaranty and that he was very often not at his home in Miami, Florida.” Given the alleged failure to properly serve him, Mr. Simmons contends the judgment is an absolute nullity.

.The record reflects that FB & T has commenced two suits involving this matter in Florida state court. According to FB & T, in October 2011, it filed a copy of the January 14, 2011 judgment in the real estate records for Miami-Dade County, Florida, where Mr. Simmons was residing. In January 2012, FB & T filed a proceeding in Florida’s Eleventh Judicial Circuit pursuant to the Florida equiv-, alent of the Uniform Enforcement of Foreign *1029 Judgments Act. At that time, the Florida court sent Mr. Simmons notice and allowed him thirty days to stay enforcement of the judgment. In February 2012, the judgment became executory in Florida. In December 2012, Regions Bank, Bank of America, and Goldman Sachs were cited as garnishees; two of Mr. Simmons’ bank accounts as well as a brokerage account were seized. Notice was provided to Mr. Simmons, who was allowed twenty days to move to dissolve the writ of garnishment. In May 2013, the Florida court entered a judgment which ordered the proceeds of the seized accounts to be paid to FB & T. FB & T further points out that "[i]n a further attempt to execute the judgment, [it] was contemplating the seizure of certain real estate owned by Mr. Simmons in Miami-Dade County.” For this apparent reason, in November 2013, Mr. Simmons filed a Notice of Designation of Homestead in the Miami-Dade County real estate records; and he provided notice of that filing to FB & T. According to FB & T, for it then to proceed with the seizure and sale, it was required by Florida law to file a declaratory judgment action against Mr. Simmons to have the court determine if he was entitled to homestead protection. In January 2014, FB & T filed such a declaratory judgment action against Mr. Simmons in Florida. Thus, there are two pending suit in the Florida courts involving this matter (the “Florida Cases ”).

. The allegation that Mr. Simmons did not sign the Guaranty — that his signature was forged — was recanted in Simmons Suit Two. Instead, in Simmons Suit Two, Mr. Simmons acknowledged that he signed the Guaranty; however, he alleged that he only intended to guarantee Loan Two — the February 12, 2008 note by Mr. Neely.

. Mr. Simmons alleged that he had standing to bring a claim under the Forbearance Agreement based on his status as a third party beneficiary of that agreement.

. Mr. Simmons alleged that FB & T novated the Guaranty by reaching an agreement with the Neelys regarding the debt.

. In 1989, the Louisiana Legislature enacted the Credit Agreement Statute, La. R.S. 6:1121-1124, which, in effect, provides a statute of frauds in actions based on credit agreements, as defined in the statute. Whitney Nat’l Bank v. Rockwell, 94-3049, p. 10 (La. 10/16/95), 661 So.2d 1325, 1331. The Supreme Court noted that “credit agreement statutes operate to preclude a borrower's affirmative actions for damages based on oral side agreements.” Rockwell, 94-3049 at p. 8, 661 So.2d at 1330.

. Mr. Canizaro joined in these exceptions. According to FB & T, the Intervention was dismissed without prejudice on July 11, 2014, on the basis of the exception of lis pendens. The dismissal was the result of Mr. Simmons’ attorney’s announcement that he had no objection to the trial court granting the exception.

. This allegation apparently is directed to La. C.C.P. art.2003, which provides that "[a] defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002.” In its answer in Simmons Suit Two, which was filed on September 8, 2014, FB & T asserted, among other things, the affirmative defense that Mr. Simmons acquiesced in the judgment by failing to object to the execution of the judgment in Florida, where he was present.

. Mr. Simmons asserts that FB & T used an incorrect and incomplete address to attempt to serve him under the LAS; specifically, he asserts that FB & T failed to include the unit number of his Florida condominium, which was the same number as his municipal address. The address used was 5325 Fisher Island Drive, Miami, Florida 33109; the address Mr. Simmons claims should have been used was 5325 Fisher Island Drive, Unit 5325, Miami, Florida 33109. He also asserts that FB & T's subsequent attempt to serve him by commercial courier was improper in that the package containing the citation and service was left in the mailroom of his condominium and signed for by a third party. Mr. Simmons further contends that FB & T’s affidavit of service, which evidences the LAS service, is insufficient. For these reasons, he contends that the LAS service was not properly made and that the judgment is an absolute nullity.

.As noted elsewhere, the gist of his contention is that the Guaranty was only intended to secure Loan Two — the loan by Mr. Neely only for the purchase of the Robert E. Lee Boulevard property. He thus contends that the Guaranty did not extend to a loan by his sister, Ms. Neely — Loan One. Based on the alleged fraud and ill practices, he contends that the judgment is a relative nullity, without prejudice.

. In its exception, FB & T contended that in both Simmons Suit One and the Intervention — both of which were pending at the time the exception was filed — Mr. Simmons made the same assertion that the judgment in the Collection Suit was a nullity. FB & T further contended that the petitions in Simmons Suit One and the Intervention were filed before the petition in this suit, Simmons Suit Two, and thus would bar the subsequent filing of another petition asserting the same cause of action arising out of the same transaction or occurrence. FB & T still further contended that the same parties in the same capacities were named in Simmons Suit One, the Intervention, and this suit, Simmons Suit Two. FB & T thus contended that the exception of lis pen-dens should be sustained and that the petition in Simmons Suit Two should be dismissed (As noted earlier, according to FB & T, its exception of Us pendens to the Intervention was granted and the Intervention was dismissed on that basis.)

. There was no pending motion to consolidate the Simmons Suit One with the Collection Suit; hence, the issue of consolidation of that suit was not addressed. In the Neely s’ Suit, the trial court denied the motion to transfer from Division "A” to Division “I.”

. The preliminary injunction, which states that it was based in part on "the stipulations of counsel entered on the record,” reads as follows:
IT IS ORDERED, ADJUDGED AND DECREED that, upon plaintiff, Norbert A. Simmons furnishing bond ... in the amount of $10,000.00, First Bank and Trust ... [is] preliminary enjoined from in any manner, directly or indirectly, taking any action to execute or enforce the judgment rendered by this court against Norbert A, Simmons in the case of First Bank and Trust v. Norbert A. Simmons, case no. 2010-9750 on the docket of this court, which judgment was signed on January 14, 2011, including but not limited to, taking any further action in the cases of First Bank and Trust v. Norbert A. Simmons, case no. 2012-3711-CA-01 on the docket of the Circuit Court of the Eleventh'Judicial Circuit in and for Miami-Dade County, Florida, Civil Division, and First Bank and Trust v. Norbert A. Simmons, case no. 2014-CA-01 on the docket of the Circuit Court of the Eleventh Judicial Court and ... for Miami-Dade County, Florida, Civil Division (hereinafter, collectively, the “Florida Cases ").
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff, Norbert A. Simmons ... [is] preliminarily enjoined from in any manner, directly or indirectly, taking any action in the [Florida Cases ]....
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that both parties shall take whatever action is necessary, in the Florida Cases, to make the judges presiding over said cases aware of this order, and to ask the judges presiding over said cases to stay further proceedings in those cases, so as to maintain the status quo ante.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, should the judges in either of the Florida [Cjases decline to stay those proceedings, the parties may apply to this court for a modification of this preliminary injunction.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff, Norbert A. Simmons ... [is] hereby preliminarily enjoined from alienating, transferring, encumbering, mortgaging, pledging, hypothecating, leasing, releasing or otherwise disposing of any and all property, movable or. immovable, real or personal, corporeal or incorporeal, tangible or intangible, whether currently owned, or hereinafter acquired, or converting any such property to property of a lype that is exempt from seizure and/or sale to satisfy a money judgment. This injunction applies to all property and all interests in property, wherever located, whether owned directly or indirectly, in the name of Norbert A. Simmons, or in the name of any other person or entity directly or indirectly for the benefit of Norbert A. Simmons, whether currently owned, or hereinafter acquired.

. On appeal, FB & T incorporates the assignments of error from its writ applications and adds the following assignments:
• It was error for the judge of Division "I" to grant judgment preliminarily enjoining FB & T from executing the judgment it had obtained against Mr. Simmons, as Simmons Suit Two was not properly allotted to Division "I."
• It was error for the judge of Division "1” to grant judgment preliminarily enjoining FB & T from executing the judgment it had obtained against Mr. Simmons, as Mr. Simmons did not demonstrate a likelihood of success on the merits.

. See also State v. Sprint Commc’ns Co., LP., 96-3094, p. 6 (La.9/9/97), 699 So.2d 1058, 1065 (Calegaro, C.J., concurring) (noting the three circumstances as "[i] the consent of all parties, [ii] grounds for consolidation, or [iii] intervention by Supreme Court Rule"); Charles S. McCowan, Jr. & Calvin C. Fayard, Jr., Louisiana Complex Litigation, 80 Tul. L.Rev.1905, 1916 (2006) (noting that "in the absence of a properly adopted rule or the consent of the parties, there exists no prac *1035 tical way to require the transfer and consolidation of cases arising from the same incident from various divisions, except pursuant to the limited provisions of [La. C.C.P. art.] 1561”) (citing Boh v. James Indus. Contractors, 03-1211, pp. 12-15 (La.App. 4 Cir. 2/11/04), 868 So.2d 180, 186-88; Bourgeois v. Daigle, 97-2235, pp. 8-9 (La.App. 1 Cir. 9/25/98), 720 So.2d 72, 76; Sprint, 96-3094 at p. 6, 699 So.2d at 1063).

. CDC App. 9.3 provides as follows:
ALLOTMENT OF CASES
1. Non-domestic cases shall be allotted equally among the divisions handling such cases..
⅜ * * * * *
4. To achieve continuity of case management, and to avoid the appearance of forum shopping, it is the policy of the court that subsequent but related cases should be transferred to the division to which the original case was allotted, whether or not such earlier case is still pending. It shall be the duty of any attorney in such cases to call to the court’s attention the existence of such earlier case. The following are examples of cases which ought to be transferred to the original division:
1. Subsequent cases between the same or related parties arising from the same incident or transaction including subsequently filed claims for contribution, indemnity, attorney fees or penalties.
* * *
4. Cases growing out of earlier cases, such as suits to enjoin executory process, to annul a judgment, suits claiming damage caused by earlier proceedings (wrongful eviction, malicious prosecution, abuse of process, etc)....
TRANSFER AND CONSOLIDATION
1. To facilitate the fair and expeditious resolution of cases, it is the policy of the court to transfer to the lower numbered suit and consolidate for trial those cases in which such consolidation is appropriate. The transfer and consolidation shall be by order of the judge to whom the case is being transferred, after contradictory hearing with all parties in each case, or with their written approval. It shall be the duty of any attorney in any case which ought to be consolidated to so move or call to the court’s attention the pendency of related cases that should be considered for consolidation. ...
⅝ sfc ⅜ # ⅜ ⅜
3. If the lower numbered'case has been dismissed with or without prejudice or the judge has rendered a judgment before the subsequent case is filed, nevertheless, cases *1036 otherwise subject to consolidation shall be transferred and/or consolidated.

. See also Williams v. Jefferson Parish Credit Union, 13-1005, p. 5 (La.App. 5 Cir. 6/24/14), 145 So.3d 491, 494 (citing Dendinger and holding that “[transfer is allowed under the provisions of La. C.C.P. art. 253.2 only for the purpose of consolidating the case with another pending case, as allowed by La. C.C.P. art. 1561.”).

. In Nicholson Management & Consultants, Inc. v. Bergman, 96-0577, 96-0578 (La.App. 4 Cir. 9/25/96), 681 So.2d 471, this court reviewed a decision of the trial court transferring and consolidating a pending oblique action from one CDC division to another division, which had heard and rendered a final judgment in the earlier case. Although this court found merit in the plaintiff's argument that under C.C.P. art. 1561, a pending case may not be consolidated with a case which had been fully adjudicated and is final and closed, this court refused to reverse the consolidation because it found the issue was not properly before it.

.In the Dendinger case, a trustee filed a petition for instructions after the succession that established the trust had been closed. The settlor’s surviving spouse filed a motion to transfer the matter to the division that had decided the succession. The trial court granted the motion to transfer, and the trustee filed a writ application. This court granted the writ and reversed the trial court's ruling based upon an application of La. C.C.P. arts. 253.1 and 253.2. This court reasoned that "[a]s a general rule, La. C.C.P. art. 253.1 requires that all cases filed in Louisiana district courts be randomly assigned. La. C.C.P. art. 253.2 provides exceptions to the random-assignment rule, allowing transfer and reassignment of cases under very limited circumstances.” Dendinger, 99-1624 at p. 3, 766 So.2d at 556. This court noted that the Louisiana Supreme Court has held that transfer is allowed under the provisions of La. C.C.P. art. 253.2 only for the purpose of consolidating. the case with another pending case, as allowed by La. C.C.P. art. 1561. Dendinger, 99-1624, pp. 3-4, 766 So.2d at 556. Accordingly, this court held that the transfer was improperly granted because no pending case *1037 existed with which to consolidate the case under review.

. Effective April 1, 2002, the Supreme Court adopted the uniform rules for the district courts, along with the appendices to those rules. Explaining its promulgation of the uniform rules for the district courts, the Supreme Court in State v. Cooper, 10-2344, p. 5 (La.11/16/10), 50 So.3d 115, 121, stated:
Acting under its constitutional authority, the Louisiana Supreme Court adopted uniform rules for the district courts "to govern interaction between the courts, counsel, and litigants, and to ensure the administration of justice in an efficient and effective manner.” 17 La. Dist. Ct. R. 1.0. These uniform rules are intended to supplement the Codes of Civil and Criminal Procedure. La. Dist. Ct. R. 1.0, Comment (a).
Under the uniform rules, a district court by en banc order may adopt administrative rules governing internal operating procedures on topics not otherwise covered by the uniform rules. La. Dist. Ct. R. 1.0. These local rules are submitted by the judicial districts for inclusion in various appendices to the uniform rules. See La. Dist. Ct. R. 1.0, Comment (b); La. Dist. Ct. R. 1.3. The Louisiana Supreme Court additionally provided a method of construing these rules and the appendices in conjunction with existing law. A conflict between a uniform rule and legislation should be resolved by following the legislation. La. Dist. Ct. R. 1.0, Comment (a). A conflict between a uniform rule and an Appendix should be *1038 resolved by following the rule. La. Dist. Ct. R. 1.0, Comment (b).

. The statutory provision also expressly refers to the Supreme Court adopting such procedures in "circumstances where an expeditious disposition of cases may be effectuated.” La. C.C.P. art. 253.2. Thus, FB & T’s reliance on the jurisprudence holding that the concept of judicial economy cannot override La. C.C.P. art. 253.2 is misplaced. See Boh, 03-1211 at p. 15, 868 So.2d at 188 (noting that judicial efficiency or economy was insufficient to allow a transfer that the law specifically forbade); see also Sprint, 96-3094 at p. 5, 699 So.2d at 1063 (rejecting the argument that the interdivisional transfer of civil cases was justified because it was made in the "best interest of judicial economy and case management”).

. In the Cooper case, the Supreme Court, albeit addressing judicial resources, noted that it had "established a framework in the uniform rules whereby district judges may tailor their case allotment plans in ways that will take into consideration the unique characteristics of their judicial district” and that it has "never required an allotment system which was purely random.” 10-2344 at p. _ 13, 50 So.3d at 126.

. See State ex rel. Chandler v. King, 43 La.Ann. 826, 9 So. 640 (1891); Brott v. New Orleans Land Co., 156 La. 807, 101 So. 150 (1924); Piper v. Olinde Hardware & Supply Co., Inc., 288 So.2d 626 (La.1974); Whitney Nat'l Bank of New Orleans v. Derbes, 436 So.2d 1185, 1192-93 (La.App. 4th Cir.1983). At the time of the Whitney case, the pertinent CDC rule, then Rule 8, Section 9, of the Civil District Court for the Parish of Orleans, provided;
Suits or proceedings that are filed subsequent to suits or proceedings already filed but which grow out of those previously filed suits or proceedings shall not be docketed as separate suits but shall be treated as parts of the previously pending suits and shall follow the prior allotment or assignment to the respective divisions of the Court. However, all motions for a new trial and all actions for nullity shall be heard by the judge who signed the original judgment. Whenever, by error or by oversight, this rule shall be violated, the judge to whom the matter shall have been allotted shall have the power to order same transferred to the proper division, there to be consolidated with the previously pending suit.
Whitney, 436 So.2d at 1192, n. 9.

.La. Distr. Ct. R. 9.3, App. 9.3 Nineteenth Judicial District Court provides:
Suits or proceedings not in their nature original, but growing out of suits or proceedings previously pending, such as actions of nullity of judgment, or to restrain or regulate the execution of process, mesne or final, in suits previously pending, shall not be docketed as separate suits, but shall be treated as parts of the original suits out of which they arise, shall be docketed and numbered as parts of such suits, and shall follow the prior allotment or assignment to the respective Division of the Court. Whenever, by error or oversight, this rule shall be violated, the Judge to whom the matter shall have been allotted shall have power to order same transferred to the proper Division, there to be consolidated with the original suit.
Furthermore, the comments to La. Distr. Ct. R. 9.3 reference Judge Shortess’ dissent in Lane Mem’l Hosp. v. Watson, 98-0273 (La.App. 1 Cir. 3/3/99), 734 So.2d 28, writs granted, decision vacated, 99-0930, 99-0947 (La.5/28/99), 743 So.2d 676. In his dissent, Judge Shortess discusses this type of local rule, stating:
The rule requires the second action to grow out of the first. The examples given in the rule are suits to annul judgments and actions to restrain or regulate the execution of process. Both of those actions need the fertile soil of a previously pending action to grow. In other words, the second action could not exist without the previous action. Furthermore, both actions to annul and actions to restrain execution seek to affect the prior proceeding.
Lane Mem’l Hosp., 734 So.2d at 33.

. See also Giuffria v. Metro Bank, 99-0052 (La.App. 4 Cir. 6/2/99), 735 So.2d 943, 944 (rejecting argument that transfer was improper and reasoning that "[t]ransfer was effected pursuant to the trial court’s local rules and, in view of the relatedness of the two cases, was perfectly proper.”).

. In Joyner v. Liprie, 41,535 (La.App. 2 Cir. 11/1/06), 942 So.2d 620, the issue presented was whether it was a violation of the requirement of random allocation of cases, La. C.C.P. art. 253.2, to have a local rule allowing a case to remain in the section of the district court to which it was assigned as opposed to follow the division or judge into a different section. Under the local rule, when the judges rotated sections, the majority of the cases stayed in the section to be handled by the judge who rotated into that section. Hence, the exception was for a case to follow the judge or division. The local rule permitted, however, judges to take with them a case in order to avoid confusion or for judicial economy. A case also could be taken with a judge if there was testimony taken or a substantial hearing had been held. Rejecting the argument that allowing a case to remain in the division violated the rule prohibiting nonrandom interdivisional transfers, the appellate court in Joyner reasoned that "allowing the case to remain in its assigned section-instead of following the division or judge into a different section-comports with the provisions of La. C.C.P. art. 253.2 and the dictates - of the Sprint case which prohibits nonrandom interdivisional transfers.” Joyner, 41,535 at p. 8, 942 So.2d at 625. The court further reasoned that the situation before it concerned "an ordinary and normal section rotation which causes a different judge to preside *1040 over the cases assigned to a section as a routine matter of course.” Id.

. In 1990, the Legislature amended La. C.C.P. art. 531 to effectuate the changes it made to the res judicata articles, La. R.S. 13:4231 and 13:4232. See Comment — 1990, La. C.C.P. art. 531. "The purpose of the change in the doctrine of res judicata was to require the plaintiff 'to seek all relief and to assert all rights which arise out of the same transaction or occurrence.’ Comment (a) to La.R.S. 13:4231. This serves the purpose of judicial economy and fairness. The focus is on the transaction or occurrence as opposed to a cause of action. See Comment (a) to La.R.S. 13:4231.” Hy-Octane Investments, Ltd. v. G & B Oil Products, Inc., 97-28, pp. 4-5 (La.App. 3 Cir. 10/29/97), 702 So.2d 1057, 1060. The five requirements for res judicata are as follows: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Burguieres v. Pollingue, 02-1385, p. 8 (La.2/25/03), 843 So.2d 1049, 1053.

. Krecek v. Dick, 13-0804, p. 4 (La.App. 4 Cir. 2/19/14), 136 So.3d 261, 264 (citing Robert L. Manard III PLC v. Falcon Law Firm PLC, 12-0147, p. 5 (La.App. 4 Cir. 11/16/12), 119 So.3d 1, 4).

. Krecek, 13-0804 at p. 4, 136 So.3d at 264 (citing Revel v. Charamie, 05-0976, p. 4 (La.App. 4 Cir. 2/15/06), 926 So.2d 582, 584).

. Id.

. Krecek, 13-0804 at p. 6, 136 So.3d at 265(citing Berrigan v. Deutsch, Kerrigan & Stiles, LLP, 01-0612, p. 6 (La.App. 4 Cir. 1/2/02), 806 So.2d 163, 167).

. See also Murrell v. Murrell, 42,070 (La.App. 2 Cir. 4/25/07), 956 So.2d 697; Succession of Harrison, 48,432, p. 8 (La.App. 2 Cir. 11/8/13), 129 So.3d 681, 685, writ denied, 14-0273 (La.4/4/14), 135 So.3d 1185; Pouncy v. Winn-Dixie Louisiana, Inc., 14-496, p. 4 (La.App. 5 Cir. 9/24/14), 150 So.3d 909, 911.

. An action to annul a judgment may be based on vices of either form or substance. See La. C.C.P. arts.2001-2004. To the extent the action to annul is based on a vice of substance (a fraud and ill practices) (referred to as a relative nullity), it must be brought by direct action — by a petition to annul. See Regions Bank v. Cabinet Works, L.L.C., 11-748, p. 24 (La.App. 5 Cir. 4/10/12), 92 So.3d 945, 961 (citing Succession of Schulz, 622 So.2d 693, 695 (La.App. 4th Cir.1993)).

.La. C.C.P. art. 462 provides:
A plaintiff may cumulate against the same defendant two or more actions even though based on different grounds, if:
(1) Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
(2) All of the actions cumulated are mutually consistent and employ the same form of procedure.
Except as otherwise provided in Article 3657, inconsistent or mutually exclusive actions may be cumulated in the same judicial demand if pleaded in the alternative.

. Mr. Simmons neither filed an opposition to FB & T’s two writ applications nor addressed the lis pendens issue in his appellee brief.

. The failure to name Mr. Canizaro in the second suit does not defeat the exception of lis pendens as to the common parties to both suits. Addressing a similar issue, we noted in Revel, 05-0976 at pp. 5-6, 926 So.2d at 585, the following:
In Building Engineering Services Co., Inc. v. State of Louisiana, 441 So.2d 417, 421 (La.App. 4 Cir. 1983), this Court held that res judicata would apply to the issue fully litigated by the common parties of the first and second suits regardless of whether defendants were added or omitted in one of the suits, provided that the parties added or omitted were not "critical to the resolution of issues between the parties in the first suit.” Id. 441 So.2d at 421. "By analogy, the identity of parties requirement for lis pendens is also not an absolute requirement, but turns on whether the parties added or omitted would be necessary to reach a judgment on all of the issues asserted against the common parties in both suits.” Fincher v. Insurance Corporation of America, 521 So.2d 488, 490 (La.App. 4 Cir.1988). See also Fire and Cas. Ins. Co. of Connecticut v. Sewerage and Water Bd. of New Orleans, 2001-0898, p. 7 (La.App. 4 Cir. 5/29/02), 820 So.2d 632, 635. Under this rationale, the test for lis pendens is satisfied as to the common' parties in the pending suits....

.We acknowledge that Simmons Suit One is pending before the same division (and trial judge) of CDC. Nonetheless, the preliminary injunction was issued based, in part, on an agreement between the parties. The parties entered into that agreement based on the status of the case that was before the trial court. Our ruling granting FB & T’s exception of lis pendens and dismissing Simmons Suit Two changes the status of the case. We further note that there are two pending cases in another state, the Florida Cases, involved in this dispute. Indeed, the record reflects that in one of the Florida Cases, the court issued an injunction; however, the record does not reflect whether that injunction is still in effect. A Louisiana court, as the trial court acknowledged, cannot stay proceedings in another state court. Moreover, a significant point raised by the pleadings in Simmons Suit Two — in both the petition and the answer — is whether Mr. Simmons acquiesced in the judgment by failing to contest FB & T’s execution of the judgment in Florida where he was residing.

. We, however, express no opinion on the merits of the issue of whether on remand the trial court, if properly presented with the issue in the context of Simmons Suit One, should issue injunctive relief.